199 P.3d 636

**Brian R. HOUNSHELL, the Sheriff in and for Apache County, Plaintiff/Petitioner/Appellee,**

v.

**Tom M. WHITE, Jr.; David A. Brown; and Jim Claw; all duly elected members of the Board of Supervisors of Apache County, a Body Politic and Corporate of the State of Arizona in their capacities as Supervisors, Defendants/Respondents/Appellants.**

No. 1 CA–CV 06–0728.

Court of Appeals of Arizona, Division 1, Department D.

July 22, 2008.

Review Denied Jan. 6, 2009.

Buckley King, LPA By Roger W. Hall, Phoenix, Attorneys for Defendants/Respondents/Appellants.

Law Office of David Alan Darby By David Alan Darby, Tucson, Attorneys for Plaintiff/Petitioner/Appellee.

Greenberg Traurig, LLP By Pamela M. Overton, Jennifer M. Dubay, Phoenix, Attorneys for Amici Curiae of Elected Maricopa County Officers.

Sheila Sullivan Polk, Yavapai County Attorney By Jack H. Fields, Deputy County Attorney, Prescott, Attorneys for Amici Curiae of Yavapai County Attorney, Yavapai County Sheriff, Yavapai County Recorder, Yavapai County Treasurer, Yavapai County Assessor and Yavapai School Superintendent.

## OPINION

SNOW, Judge.

¶1 Apache County Supervisors Tom M. White, Jr., David A. Brown, and Jim Claw (collectively "the Board"), acting in their official capacities, appeal from the superior court's judgment reinstating Brian R. Hounshell as sheriff of Apache County and awarding him attorneys' fees in the amount of $10,000. After oral argument was held on this appeal, Hounshell entered a plea on certain criminal charges filed against him. In the plea, he agreed to surrender his office as Sheriff of Apache County and to never again seek or hold that office.

¶2 Hounshell's plea agreement would moot this appeal but for the Board's continued appeal of the superior court's award of attorneys' fees to Hounshell. The superior court awarded such fees pursuant to Arizona Revised Statutes ("A.R.S.") section 12–348 (2003), based on its determination that Hounshell was the prevailing party on the consolidated civil actions that resulted from Hounshell's removal from office. We must thus examine the superior court's substantive rulings to determine the Board's appeal of the superior court's attorneys' fees award.

¶3 The superior court ruled that A.R.S. § 11–253(A) (2001), pursuant to which the Board voted to remove Hounshell, was implicitly repealed by H.B. 2120, 46th Leg., 1st Reg. Sess. (2003). In making that ruling, the superior court erred as a matter of law. But, even granting that the Board has authority under § 11–253(A) to remove a county sheriff from office for failure to post a bond required by the Board, when the Board requires a county officer to post a bond, the premium on the bond is a public expense when the bond meets the requirements of A.R.S. § 38–254 (2001).

¶4 Because the Board ordered Hounshell not only to post the bond but also erroneously ordered him to pay all premiums on the bond at his own expense, the Board imposed conditions on Hounshell's obligation to post a bond that are inconsistent with the law. It thus acted in excess of its authority in removing Hounshell for his failure to post a bond, and the superior court correctly characterized Hounshell as the prevailing party in his dispute with the Board. Because § 12–348 requires the mandatory award of fees to a party other than "this state or a city, town or county" which prevails on the merits in the type of actions that have been consolidated here, we affirm the superior court's award of attorneys' fees to Hounshell. *State ex rel. McDougall v. Albrecht,* 168 Ariz. 128, 133, 811 P.2d 791, 796 (App.1991) ("When a lower court comes to the proper conclusion for the wrong reason we are obliged to affirm the ruling if it was legally correct for any reason.").

## FACTUAL AND PROCEDURAL HISTORY

¶5 Prior to the facts giving rise to this action, Hounshell, the duly-elected Sheriff of Apache County, was indicted for crimes relating to the misuse of public funds and other property to which he had access by virtue of his office. On June 3, 2005, Arizona Counties Insurance Pool ("ACIP"), from which Apache County insured the performance of its county officers, notified the Board that pursuant to exclusion provisions in the County's insurance policy it would not cover losses occasioned by any fraudulent or dishonest acts of Hounshell occurring after he was indicted.

¶6 As a result, the Board voted to require Hounshell to post a $100,000 bond "to cover the cost of defending and paying for any claims for which Apache County does not have coverage due to the [insurance] exclusion." The Board also required Hounshell to

pay the premiums on the bond. When Hounshell failed to post the bond, the Board voted to remove him from office.

¶ 7 Hounshell then filed a special action complaint asking that the Board's order removing him from office be declared void. The County filed two *quo warranto* actions seeking to effectuate Hounshell's removal. The three actions were consolidated. The trial court ruled that the Board lacked the authority to remove Hounshell for failure to post the bond and that Hounshell was entitled to his office. The Board appealed, and we have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## ANALYSIS

¶ 8 The issues in this appeal involve the interpretation of a statute. We review such interpretations *de novo*. *Phoenix Newspapers, Inc. v. Ariz. Dep't of Econ. Sec.*, 186 Ariz. 446, 448, 924 P.2d 450, 452 (App. 1996).

## I. The Board May Require the Sheriff to Post a Bond.

### A. Background

¶ 9 According to § 11–253(A):

[A county board of supervisors] may require any county officer ... to give such bonds or further bonds as may be necessary for the faithful performance of his respective duties. An officer who neglects or refuses ... to give the bond within ten days after being so required[ ] may be removed from office by the board....

It is pursuant to this statute that the Board required Hounshell to post a bond and voted to remove him from office when he failed to do so.

¶ 10 The court reinstated Hounshell on the ground that the "part of A.R.S. [§ ] 11–253 allowing the Board to remove a county officer for failure to post a bond" was implicitly repealed when the Legislature enacted H.B. 2120 in 2003. In so ruling, however, the superior court erred. H.B. 2120 amended the public agency pooling statute, A.R.S. § 11–952.01 (2001) (amended 2003), to authorize counties and other public agencies to obtain liability coverage for the acts of their officers through authorized pool coverage.[1] In light of this authorization, H.B. 2120 deleted statutory provisions that either required specific county office holders to post a bond or the county to obtain a blanket bond for its officers. The bill thus also deleted the statutory provision that premiums for "official bonds required by law to be given by public officers, deputies or clerks" were a county charge, A.R.S. § 11–601(9) (2001) (amended 2003), and the provision that a public office would be deemed vacant if the public official elected to that office failed to file "his official ... bond within the time prescribed by law," A.R.S. § 38–291(9) (2001) (amended 2003).

¶ 11 Despite its deletion of these statutes requiring either that the County obtain a blanket bond for all of its officers or that particular county officers obtain a bond, H.B. 2120 did not delete or amend § 11–253. As stated above, this statute permits a county board of supervisors, at its discretion, to "require any county officer ... to give such bonds or further bonds as may be necessary for the faithful performance of his respective duties." A.R.S. § 11–253(A). It further permits the Board, at its discretion, to remove the officeholder "who neglects or refuses ... to give the bond within ten days after being so required." *Id.*

¶ 12 To the extent possible, the courts must enforce all statutes that have been duly enacted. In so doing, it is the court's "obligation to harmonize related statutes," and this obligation " 'applies even where the statutes were enacted at different times, and contain no reference one to the other.' " *State v. Buhman*, 181 Ariz. 52, 56, 887 P.2d 582, 586 (App.1994) (quoting *State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970)). Furthermore, it is immaterial to this endeavor that the statutes are found in different titles. *Larson*, 106 Ariz. at 122, 471 P.2d at 734. Findings by

1. At its option, a county may instead elect to purchase liability insurance or to self-insure to protect itself and its citizens from the errors and omissions of its officers. *See* A.R.S. § 11–261 (2001).

the court that the Legislature meant to repeal statutes or provisions not explicitly repealed are disfavored. *See, e. g., State v. Tarango,* 185 Ariz. 208, 210, 914 P.2d 1300, 1302 (1996).

¶ 13 There are, nevertheless, two recognized bases upon which a statute may be deemed implicitly repealed. The first is when a statute is unavoidably inconsistent with another more recent or more specific statute. *See, e.g., UNUM Life Ins. Co. of America v. Craig,* 200 Ariz. 327, 333, ¶¶ 28–29, 26 P.3d 510, 516 (2001) (providing that where "two conflicting statutes cannot operate contemporaneously" the more recent or more specific statute governs). The second is when two statutes cover the same subject matter and the earlier statute is not explicitly retained by the later statute. A.R.S. § 1–245 (2002) ("[I]n all cases provided for by the subsequent statute, the statutes ... theretofore in force, whether consistent or not with the provisions of the subsequent statute, unless expressly continued in force by it, shall be deemed repealed and abrogated."); *Olson v. State,* 36 Ariz. 294, 301, 285 P. 282, 285 (1930) (stating that repeal by implication results where the subsequent statute deals with "the same subject matter" as the earlier consistent statute). We find that neither of these circumstances exists here. There is no part of § 11–253 that is inconsistent with any other existing statute, and no statute enacted or amended by H.B. 2120 dealt with the same subject matter as § 11–253.

**B. The Existing Statutes Are in Harmony**

¶ 14 H.B. 2120 specifies certain statutes that are to be repealed or modified by its enactment, but § 11–253 is not among them. *See State Land Dep't v. Tucson Rock & Sand Co.,* 107 Ariz. 74, 77, 481 P.2d 867, 870 (1971) ("[W]here a statute expressly repeals a specific act, the naming of those to be superseded is indicative of an intention not to repeal or interfere with the operation of others."). The statute thus remains the law in Arizona, and the Board is entitled to take action pursuant to it.

¶ 15 Hounshell argues that while H.B. 2120 did not modify § 11–253, it did modify part of

§ 38–291 in a way that, he argues, creates an irreconcilable conflict with the portion of § 11–253 allowing a county board to remove an officer for failure to post a bond required pursuant to that statute. We disagree.

¶ 16 In removing the statutory requirement that certain office holders be bonded in favor of authorizing pooled coverage, but leaving unchanged the statute that permits a board of supervisors to require an additional bond at its discretion, the Legislature may have been anticipating circumstances similar to those that present themselves here. That is, in those circumstances in which the provider of pooled coverage refuses to extend coverage for certain acts of county officers, the Legislature permitted the county board of supervisors to otherwise provide protection for the county and its citizens pursuant to § 11–253 by requiring the county officer to post a bond.

¶ 17 There is thus no conflict between the two statutes as they currently exist. Section 38–291 lists several circumstances under which an office is deemed vacant as a matter of law. Prior to the passage of H.B. 2120, that statute specified that an office was deemed vacant upon the "[f]ailure of the person elected ... to file his official oath *or bond* within the time prescribed by law." A.R.S. § 38–291(9) (emphasis added). Hounshell thus argues that in repealing that provision of § 38–291(9) that declared an office vacant for the office holder's failure to file an official bond, the Legislature implicitly repealed the portion of § 11–253(A) that would allow the Board, at its discretion, to remove Hounshell for his failure to file a bond that it required.

¶ 18 The removal of the statutory bond requirements also sensibly resulted in the removal of the parallel provision that failure to file the bond would result in a vacancy in office. When it comes, however, to circumstances in which, pursuant to § 11–253, a county board makes the discretionary decision to require the office holder to post a bond in addition to whatever coverage the county may have otherwise obtained, it makes no sense to deprive the Board of any remedy should the office holder refuse to

comply. This is especially so when the plain language of § 11–253 authorizes the Board to remove the office holder for his or her failure to do so.

¶ 19 Further, unlike the penalty specified by the former version of § 38–291(9), under § 11–253(A) the office is not deemed vacant as a matter of law upon the office holder's failure to post the bond. Rather, that failure merely authorizes the county board of supervisors, at its discretion, to remove the offending officer. Because the discretionary right of a county board to impose a bond requirement was not altered by the Legislature, it does not make sense to argue that the penalty for failing to comply with the Board's direction is inconsistent with the amended § 38–291, which, at any rate, now imposes no penalty at all. Section 11–253 imposes its own penalty, which now is and has always been different than the former mandatory penalty for failing to file a statutory bond which has since been removed from § 38–291(9). Thus, there is no inconsistency between the statutes.

### C. No Subsequent Statute Supersedes § 11–253

¶ 20 Further, as explained above, § 11–253 and § 38–291 do not cover the same subject matter, so § 1–245 does not come into play.

¶ 21 Likewise, § 11–952.01, which covers pool insurance and was amended by H.B. 2120 to permit a county to insure the performance of its officers in such coverage, does not cover the same subject matter as § 11–253. Even if § 11–952.01 is viewed as a substitute for A.R.S. § 38–252 (2001), which mandated blanket coverage for all county officers and was repealed by H.B. 2120, it cannot be viewed as a substitute for § 11–253, which does not mandate blanket coverage and was, at any rate, not repealed. That the Legislature replaced the blanket bonding required under § 38–252 with the ability to cover officers through pool insurance does not mean that it intended to replace what has always been a separate and merely permissive, rather than mandatory, bonding provision under § 11–253 as well. We hold, therefore, that § 11–952.01 cannot properly be said to deal with the same subject matter as § 11–253, and the Legislature did not need to explicitly retain § 11–253 when it passed H.B. 2120. By § 1–245's own terms, it applies only to "cases provided for by the subsequent statute" involving the same subject matter. Because § 11–952.01 does not address what a county may do when it participates in pool insurance but the insurer excludes a particular officer from coverage, it does not provide for the case at hand or preclude the use of § 11–253 under these, or other, circumstances.

### D. There Is No Other Basis for Finding an Implied Repeal

¶ 22 Despite the fact that repeal by implication is disfavored, Hounshell invites this court to establish a new basis on which to find repeal by implication. Hounshell's argument is that when the explicit repeal of one provision suggests that if the Legislature had considered the issue, it might have repealed another provision as well, the second provision is implicitly repealed. We decline to adopt this principle.

¶ 23 It is not appropriate to even consider what statutes the Legislature has chosen to repeal or amend if the current statutes can be understood without recourse to this history. *See Palmcroft Dev. Co. v. City of Phoenix,* 46 Ariz. 200, 211, 49 P.2d 626, 630 (1935) ("[I]f the language used by [the Legislature] is plain and unambiguous and leads to no absurd result, the courts are not justified in substituting their opinion of what was intended for the intent of the Legislature so expressed."). It is fundamental that individuals be able to ascertain what the law is. Implicit repeal is disfavored and courts enforce the plain meaning of statutes in part so that people have fair notice of what the laws are before they act, rather than only after the matter has been litigated. These rules of statutory construction permit citizens to rely on the published statutes.

¶ 24 Hounshell asserts that the modification of § 38–291(9) is not consistent with § 11–253, but courts only properly consider such arguments if the existing statutes cannot be harmonized. And here, as explained above, they can be. The same prob-

lem besets Hounshell's argument with respect to the legislative fact sheets regarding H.B. 2120. Where statutes are clear and function harmoniously, it is not appropriate to consult legislative history and then use that history as a basis upon which to find an implicit repeal. *See In re Adam P.*, 201 Ariz. 289, 291, ¶¶ 12–13, 34 P.3d 398, 400 (App. 2001) (refusing to consider an argument based on legislative fact sheets where the statute was clear). The law is the legislation, not the fact sheets or bill summaries. The latter do not always faithfully capture every aspect of the former, and certainly the courts cannot find the laws to be different than they are on the ground that the legislative fact sheets suggest something different than the plain meaning of the statutes. *See Butch Randolph & Assocs., Inc. v. Int'l Fid. Ins. Co.*, 212 Ariz. 550, 553 n. 3, ¶ 12, 136 P.3d 232, 235 n. 3 (App.2006) (rejecting a senate fact sheet's description of an amendment because it was "contrary to the plain wording of the statute").

¶ 25 Hounshell's argument on appeal amounts to the assertion that the only reason § 11–253 was not explicitly amended or repealed by H.B. 2120 was because the Legislature overlooked it. A court makes no such presumptions. *See, e.g., Daou v. Harris*, 139 Ariz. 353, 356–57, 678 P.2d 934, 937–38 (1984). Even if we were to assume the Legislature overlooked § 11–253 when it passed H.B. 2120, we have no way of knowing what the Legislature would have done if § 11–253 had been brought to its attention. Therefore, even if we consider possible inconsistencies, not in existing statutes but in the Legislature's decisions about what to repeal and what not to repeal, we find no basis upon which to repeal a statute the Legislature has not chosen to repeal.

### E. The Board May Protect the County from Liability for Possible Future Wrongdoing

¶ 26 Hounshell argues that if we reject the trial court's conclusion that the Leg-

islature implicitly repealed the relevant portions of § 11–253 when it passed H.B. 2120, we should nevertheless find that it was illegal for the Board to require Hounshell to post a bond.[2] Hounshell argues that "the law presumes a Sheriff will conduct his office and perform his duties legally and without fraud or dishonesty" and that it follows that the Board is not entitled to require Hounshell to post a bond that would protect the county should Hounshell engage in dishonest acts in the future.

¶ 27 We find this argument also to be without merit. If it were cogent, then it would also be illegal for the county to participate in ACIP because the insurance provided covers counties for dishonest acts done before the dishonesty is discovered. The cases cited by Hounshell deal with what courts may presume rather than with what county boards of supervisors may presume, and they deal with presumptions about the wrongfulness of past behavior. *See, e.g., Poley v. Bender*, 87 Ariz. 35, 40, 347 P.2d 696, 699 (1959) (stating that to prevail in a tort action for fraud, fraud cannot be presumed but must be proven by clear and convincing evidence); *Hunt v. Campbell*, 19 Ariz. 254, 264, 169 P. 596, 600 (1917) ("[N]o court ... is permitted to found its judgment upon mere suspicion and conjecture of wrongdoing, but, unless there be satisfactory evidence to the contrary, to look upon the acts of public officials with a presumption of their rectitude and good faith.").

¶ 28 In any event, the Board does not have to presume that Hounshell has engaged in past wrongdoing to require him to post a bond. Insuring against the possibility of future wrongdoing is not the same as presuming that past acts were wrongful. The Board does not even have to presume that Hounshell might engage in future wrongdoing to sensibly seek to protect itself with a bond as it is costly to defend all claims—not just

---

2. The Board argues that we should not consider other arguments raised in the trial court that might support the trial court's order but were not the basis of that court's decision. This contention is clearly unfounded. *See* ARCAP 13(b)(3) ("The brief of the appellee may ... in-

clude in the statement of issues presented for review and in the argument any issue properly presented in the superior court. The appellate court may affirm the judgment based on any such grounds.").

meritorious ones. We also find that, contrary to Hounshell's suggestion, there was nothing arbitrary about the Board requiring an officer who had been excluded from coverage by ACIP to obtain a bond.

### F. A Person Who Fails to Post a Bond "Neglects" to Post a Bond

¶ 29 Under § 11–253, Hounshell may only be removed from office if he "neglects or refuses ... to give the bond." According to Hounshell, he was "unable to secure a surety company to post the bond." Hounshell claims that this does not amount to neglecting to give the bond because it was "a factual and financial impossibility for him to post the bond via traditional corporate surety arrangements."

¶ 30 Hounshell is defining "neglect" more narrowly than is appropriate in the context of § 11–253. The second definition of "neglect" given in Merriam–Webster's Online Dictionary is "to leave undone or unattended to especially through carelessness." http://m-w.com/dictionary/neglect; *see State v. Mahaney*, 193 Ariz. 566, 568, ¶ 12, 975 P.2d 156, 158 (App.1999) ("In determining the ordinary meaning of a word, we may refer to an established and widely used dictionary."); *Black's Law Dictionary* 930 (5th ed. 1979) ("May mean to omit, fail, or forbear to do a thing that can be done, or that is required to be done ..."). Although the reason Hounshell did not give the bond was not carelessness, he did leave the required task undone. In this sense, he neglected to do it.

¶ 31 The purpose of requiring Hounshell to post the bond was that without it the taxpayers were at risk. The purpose of the statute is to give the board of supervisors a way of insuring that the taxpayers are not left open to such risks. That purpose would be poorly served if "neglect" were interpreted to mean "to leave undone through carelessness" rather than "to leave undone especially through carelessness," and, in effect, therefore, simply "to leave undone." The taxpayers are at risk regardless of why Hounshell failed to secure the bond.

¶ 32 Furthermore, as the Board points out, other statutes using the phrase "neglects or refuses" apply when individuals have failed to do the required act because they are unable to do it. *See, e.g.,* A.R.S. § 14–3604 (2005) (Stating that the authority granted to a personal representative required to replace a surety will be revoked if the representative "neglects or refuses to give new and sufficient security."); A.R.S. § 33–361(A) (2007) ("When a tenant neglects or refuses to pay rent whom the rent is due ... may reenter and take possession...."); A.R.S. § 42–1201(A) (2006) ("If a person liable to pay any tax neglects or refuses to pay the tax, the [department of revenue] may collect the tax ... by levy upon [certain property or wages.]"); *cf. Wash. Nat'l Ins. Co. v. Employment Sec. Comm'n*, 61 Ariz. 112, 119, 144 P.2d 688, 691–92 (1944) ("[L]egislative construction in one act of the meaning of certain words is entitled to consideration in construing the same words appearing in another act.").

### G. The Board Did Not Have to Be Satisfied with a Pledge of Personal Assets

¶ 33 Finally, Hounshell argues that the Board should have accepted his offer to "pledge all his personal assets and salary to Apache County to satisfy the Board's bond requirement." Hounshell cites no authority, however, for the proposition that when a county board of supervisors requires the posting of a bond under § 11–253, it is required to accept a pledge of personal assets and salary in lieu of the required bond.

## II. The Board May Not Require the Sheriff to Pay the Premiums.

¶ 34 Although we find that the Board could require Hounshell to post the bond pursuant to § 11–253, we further find that the Board could not require Hounshell to pay the premiums on the bond if he obtained a bond meeting statutory requirements. Under § 38–254, if a public officer is required to "give bond for the performance of the duties of his office and the surety of the bond is a corporation, the premiums for the writing of the bonds shall be a public charge."

### A. Our Interpretation of the Statutes Does Not Render Them Absurd or Meaningless

¶ 35 The Board argues that we should not respect the plain meaning of § 38–254 because it renders our interpretation of the statutes absurd. *See State v. McFall*, 103 Ariz. 234, 238, 439 P.2d 805, 809 (1968) ("Courts will not place an absurd and unreasonable construction on statutes."). The Board contends that "it makes no sense to have one entity secure the bond and another pay for it." The history of our statutes, however, says otherwise. Up until 1972, county officers were required to execute their own bonds as a matter of course. *See* A.R.S. § 38–252 (1956), *repealed by* 1972 Ariz. Sess. Laws, ch. 42, §§ 1–2. Beginning in 1912, the premiums on those bonds, up to one half of one percent of the value of the bond per year, were designated a county charge. *See* 1912 Ariz. Sess. Laws, ch. 93, § 24. In 1937, the ceiling on the premium the county would pay was removed. *See* 1937 Ariz. Sess. Laws, ch. 19, § 1 (2d Spec. Sess.). Therefore, for at least sixty years, it was a routine matter for individual officers to be required to give bonds and for the county to be required to pay part or all of the premiums on those bonds.

¶ 36 The Board further argues that § 11–253(B), allowing an officer to appeal the amount of the bond required pursuant to § 11–253(A), would be meaningless if the officer did not have to pay the premiums on the bond. This assertion is also belied by statutory history. Up until 1972, when procuring bonds under § 38–252 became a county responsibility, the statute had the following provision: "The board may at any time order the amount of an official bond to be increased. The officer whose bond is so increased or fixed may appeal to the superior court and it shall determine the appeal and fix the bond." A.R.S. § 38–252(D) (1956) (repealed 1972). The premiums on these bonds were clearly county charges, and yet the officer was permitted to appeal the

amount of the bond. When the Legislature made the procurement of the bonds the county's responsibility, it also eliminated the officer's right to appeal the amount of the bond, despite the fact that the board of supervisors retained authority to fix the amount of the bond. *See* 1972 Ariz. Sess. Laws, ch. 42, §§ 1–2; *see also* A.R.S. § 38–252 (2001). Therefore, the Legislature has treated the ability to appeal the amount of the bond as connected with the responsibility for procuring the bond rather than with the responsibility for paying the premiums on the bond.

¶ 37 Hounshell's experience may demonstrate why this is so. Hounshell alleges that "he was unable to find corporate surety to post the bond absent $100,000 cash as collateral." Given that no statute makes the provision of collateral a public responsibility, Hounshell still has a stake in the amount of the bond even if the county must pay the premiums.[3]

### B. There is No Implicit Repeal of § 38–254

¶ 38 The Board also argues that the County should not have to pay the premiums if Hounshell obtains a bond that meets the statutory standards because H.B. 2120 removed "[p]remiums for official bonds required by law to be given by public officers, deputies or clerks" from the list of county charges in § 11–601.

¶ 39 In making this argument, the Board relies on the same kind of flawed analysis put forward by Hounshell in arguing that the repeal of failure to post a bond as a reason for deeming an office vacant under § 38–291 implied the repeal of parts of § 11–253. There is no inconsistency between § 11–601 as it has been amended by H.B. 2120 and § 38–254. Thus, there is no reason for us to consider legislative history. Under what is now renumbered as § 11–601(9), county charges include sums "directed by law to be raised for a county purpose or declared to be a county charge." Because § 38–254 de-

---

**3.** It is possible that premiums and collateral may be varied such that bonds are available that meet the statutory requirements, and require minimal collateral, but have premiums so high that they would not be a satisfactory solution for counties seeking to cover officers excluded from coverage by ACIP. But if the Legislature did not intend what results from the enforcement of both § 11–253 and § 38–254, it is for the Legislature to fix it.

clares that the premiums on bonds meeting certain criteria are county charges, § 11–601(9) makes those premiums county charges as well.

¶ 40 The Board argues that the repeal of the former § 11–601(9), making bond premiums a county charge, trumps § 38–254 because it is both more recent and more specific. The problem with this analysis is that "[H.B.] 2120's repeal of subsection 11–601(9)" is not in itself a statute, so the principle that the more recent and more specific statute governs when two statutes conflict does not apply. The statutes at issue here are § 11–601, as amended by H.B. 2120, and § 38–254. The two statutes do not conflict, so we do not choose which one to enforce. We enforce both.

¶ 41 What exists today is a statute, § 11–253, giving the Board the right to require Hounshell to post a bond, and a statute, § 38–254, requiring the county to pay the premiums on the bond if the surety is a corporation and the bond otherwise meets statutory requirements.

### ATTORNEYS' FEES

 ¶ 42 The trial court awarded Hounshell $10,000 in fees and expenses pursuant to § 12–348. The question before us is not, as the Board suggests, whether Hounshell acted appropriately as an agent of the County in securing alternate representation for himself for which the County is bound to pay as a matter of contract. Rather, under § 12–348, an individual who prevails in certain types of litigation with the government is to be awarded attorneys' fees. As Hounshell correctly points out, nothing in § 12–348 conditions his receipt of an award of attorneys' fees on the following of the County's purchasing procedures. Neither Hounshell, nor his attorney, received an attorneys' fees award against the County because he is a county employee. Hounshell received the award because he is the prevailing party in a lawsuit against the County. And, contrary to the Board's suggestion, he is not precluded from relying on § 12–348 because he is a county officer. By its terms, § 12–348 applies "to any party other than this state or a city, town or county."

¶ 43 We find that Hounshell prevailed on the merits in that the Board admitted at the hearing that it had told Hounshell he would be responsible for paying the premiums on any bond he could obtain, and this it was not permitted to do. We thus affirm the trial court's award of attorneys' fees to Hounshell.

### CONCLUSION

¶ 44 The Board may require Hounshell to post a bond pursuant to § 11–253, but pursuant to § 38–254 the County must pay the premiums on that bond if the surety on the bond is a corporation and the bond otherwise complies with the requirements for an official bond. Because the Board erroneously mandated otherwise, it did not have the authority to remove Hounshell for his failure to post a bond. We thus affirm the superior court's award of attorneys' fees to Hounshell.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and PHILIP HALL, Judge.

