NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SUSAN WALKER, et al., *Plaintiffs/Appellants*,

*v.*

U-HAUL INTERNATIONAL INC, et al., *Defendants/Appellees*.

No. 1 CA-CV 16-0366
FILED 2-15-2018

Appeal from the Superior Court in Maricopa County
No. CV2012-005444
No. CV2013-005508
(Consolidated)
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

McFadden, Ticen & Beam PLC, Chandler
By Garrick A. McFadden, Paul D. Ticen, Henry H. Beam
*Co-Counsel for Plaintiffs/Appellants*

Ahwatukee Legal Office, P.C., Phoenix
David L. Abney
*Co-Counsel for Plaintiffs/Appellants*

The Ward Firm, Sacramento, CA
By Justin L. Ward
*Co-Counsel for Plaintiffs/Appellants appearing Pro Hac Vice*

Snell & Wilmer L.L.P., Phoenix
By Patrick X. Fowler, Nicole E. Sornsin, Kelly A. Kszywienski
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Judge Kent E. Cattani joined. Presiding Judge James P. Beene specially concurred.

---

**H O W E**, Judge:

¶1        Susan Walker, doing business as Diamondback Movers, and 13 other moving-related service companies (collectively the "service providers") appeal the trial court's grant of summary judgment in favor of Defendants eMove, Inc., and U-Haul (collectively "U-Haul"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Starting in 2002, U-Haul, through its subsidiary eMove, created a website that it called the Moving Help Marketplace (the "Marketplace"), which allowed moving-related companies to advertise their services in exchange for a fee. The service providers gave information to eMove to advertise on the Marketplace, including rate information, services offered, policies, and procedures. Without the service providers' knowledge or express permission, however, U-Haul used the service providers' information to create profiles for advertising on third-party websites. Although these advertisements used the service providers' trade names and addresses, they used phone numbers that led to U-Haul's call center. These advertisements also included hyperlinks to U-Haul's web pages, www.movinghelp.com and www.uhaul.com. After each plaintiff's participation in the Marketplace was terminated at various times, U-Haul

2

continued to leave the hyperlinks and phone numbers active on the third-party websites.

¶3        After learning of this practice, some of the service providers used the phone numbers provided on the advertisements to call the U-Haul call center to see if the employees were representing themselves to potential consumers as the service providers. The call center employees identified themselves as "Moving Help" and not as any of the service providers. Additionally, when asked if they represented the service providers, the employees stated that they did not.

¶4        Walker sued U-Haul alleging that it had misappropriated her trademark, which allowed U-Haul to illegally obtain business using Diamondback Movers' trade name. She claimed this action violated A.R.S. § 44–7202 (2014),[1] which prohibits using the internet to induce someone to provide identifying information by misrepresenting that the information is for an on-line business that has not authorized the solicitation. The other moving-related service companies filed a separate lawsuit against U-Haul, also alleging that U-Haul had violated § 44–7202. The court consolidated the cases, combining the claims of all 14 plaintiffs against U-Haul.

¶5        U-Haul moved for summary judgment on all claims, arguing that § 44–7202 was inapplicable because it was designed to prohibit "phishing," which is the impersonation of an online business or financial institution for the purpose of stealing a victim's personal identifiable or financial information. The trial court granted U-Haul's motion, finding § 44–7202 inapplicable because the third-party web pages (on which the service providers' names were used) did not solicit, request, or induce another person to provide identifying information. The trial court noted that on the website that requested identifying information, U-Haul did not refer to the service providers, and thus did not violate § 44–7202. The court reasoned that "[w]hile misrepresenting yourself as a different company without their permission may be a basis for civil, or even criminal action, that misrepresentation alone does not result in a violation of [§ 44–7202]." After concluding that U-Haul's conduct did not violate § 44–7202, the trial court noted that its conclusion was consistent with the statute's legislative history, which evidenced an intent to criminalize phishing. The service providers timely appealed.

---

[1]        This statute was amended in 2015. *See* H.B. 2413, 52d Leg., 1st Reg Sess. (Ariz. 2015). However, the amendment was not made retroactive, and therefore, the 2014 statute applies in this case.

## DISCUSSION

**¶6** The service providers argue that summary judgment was inappropriate because whether U-Haul violated § 44–7202 was a disputed issue of fact. Entry of summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We determine de novo whether any genuine issue of material fact exists and whether the trial court erred in applying the law. *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 104 ¶ 13 (App. 2017). We construe the evidence and reasonable inferences in the light most favorable to the non-moving party. *Sanders v. Alger*, 242 Ariz. 246, 248 ¶ 2 (2017).

**¶7** Issues of statutory construction and interpretation are reviewed de novo. *Green Cross Med., Inc. v. Gally*, 242 Ariz. 293, 295 ¶ 5 (App. 2017). The Court's primary goal in interpreting statutes is to effectuate the legislature's intent. *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). A statute's language is the most reliable indicator of its meaning. *See Sempre Ltd. P'ship v. Maricopa Cty.*, 225 Ariz. 106, 108 ¶ 5 (App. 2010). When the plain text of a statute is clear and unambiguous the court need not resort to secondary methods of statutory interpretation to determine the legislative intent because its intent is readily discernable from the face of the statute. *State v. Christian*, 205 Ariz. 64, 66 ¶ 6 (2003).

**¶8** The relevant statute here, section 44–7202, states:

> A person shall not by means of a web page or electronic mail message or otherwise using the internet solicit, request or take any action to induce another person to provide identifying information by representing that the person, either directly or by implication, is an on-line business without the authority or approval of the on-line business.

Section 44–7202's language is clear and unambiguous.[2] This statute prohibits a person from (1) using a web page, email, or the internet (2) to

---

[2] The service providers claim that the trial court improperly considered the statute's legislative history in ruling that U-Haul's conduct did not violate the statute. The service providers argue that the trial court should not have consulted the legislative history because the statute was unambiguous. We agree that the statute was unambiguous, but we disagree with their assertion that the trial court examined the legislative history to

solicit, request, or take any action that would induce another person to provide identifying information, (3) by representing that the person is an on-line business, (4) without authority or approval of the on-line business.

**¶9** Here, U-Haul's actions did not fall within the statute. On the third-party web pages, U-Haul represented the service providers, but it did not solicit, request, or induce potential customers to provide identifying information. While the second web page (either www.movinghelp.com or www.uhaul.com) and phone receptionists did request identifying information, in no instance did U-Haul claim to represent the service providers—either on the web page requesting identifying information or during the phone calls. Thus, at no point in time did U-Haul's use of its web page or phone calls in which identifying information was requested result in a violation of § 44–7202.

**¶10** The service providers counter that the trial court incorrectly concluded that § 44–7202 required direct solicitation, direct inducement, or direct request of a consumer tied to the representation before someone could be liable for its violation. The service providers contend that a person can violate the statute without any direct solicitation, direct inducement, or direct request of a consumer. But the statute provides that "[a] person shall not . . . solicit, request or take any action to induce another person to provide identifying information by representing that the person, either directly or by implication, is an on-line business . . . ." Thus, the phrase "either directly or by implication" relates to the act of misrepresenting the person or entity that is requesting identifying information. Here, U-Haul did not purport to be representing the service providers at any time when U-Haul solicited identifying information from customers. Therefore, this argument fails.

**¶11** Similarly, the service providers argue that the trial court erred by concluding that U-Haul had not made any "communications" in which it had misrepresented itself as the service providers. Specifically, the service providers argue that § 44–7202's plain wording does not limit violations to "communications" in which the persons misrepresent themselves and that "any action" that induces another person to provide identifying information, either directly or by implication, is sufficient to support liability. The service providers contend that U-Haul's web page and other internet-based actions induced potential consumers to eventually provide

resolve any ambiguity. The trial court found that the statute was unambiguous, and it merely discussed the legislative history as further support of its determination. As such, the service providers' arguments about the trial court's analysis of the legislative history are inapplicable.

identifying information and that no temporal link was required between the alleged representation and alleged solicitation.

¶12            As stated earlier, however, the phrase "either directly or by implication" applies only to the statutory language of "by representing" and not to the language of "any action to induce." The record reflects that when consumers clicked on the third-party web page advertisement with the misrepresentation, they were directed to a second web page at either www.movinghelp.com or www.uhaul.com, both of which did not display any information related to the service providers. Furthermore, after consumers inserted moving information onto the second web page it displayed a list of available moving companies, and none of these companies were the service providers. As for consumers who called U-Haul based on the third-party web page's advertisement, they were greeted with the phrase "Moving Help" and not the names of the service providers. Moreover, when asked if Moving Help was any of the service providers, the call center employees replied that they were not. To follow the service providers' interpretation would lead to absurd results. For instance, if U-Haul had affirmatively informed a consumer that it had no connection to the service providers, but in spite of that the consumer still decided to use U-Haul's services, then U-Haul would still be liable under the statute because the initial third-party web page advertisement "induced" the consumer to contact U-Haul and to eventually purchase its services. Consequently, this argument also fails.

¶13            Additionally, the service providers claim that the trial court's ruling that the misrepresentation must also "solicit, request or take any action to induce another person to provide identifying information" is not accurate because the statute only discusses "representing" rather than "misrepresenting." The attempted distinction between "representing" and "misrepresenting" in the context of the statute is not persuasive because the act of representing oneself as another party without authority is a misrepresentation.

¶14            Last, the service providers argue that the trial court's "misrepresentation" analysis implied that the 2005 version of § 44–7202 imposed a requirement to prove an intent to commit fraud or theft, but the implication was erased by the statute's 2015 amendment in which a specific intent requirement was added. Because the statute is criminal in nature, however, it necessarily implies intent or would otherwise constitute an improper strict liability crime. *See State v. Averyt*, 179 Ariz. 123, 129 (App. 1994) (noting that "the established rule, with few exceptions, prohibits criminal punishment without wrongful intent"). An exception to the rule

occurs only when the legislature clearly determines so. *State v. Crisp*, 175 Ariz. 281, 282–83 (App. 1993). The record does not clearly show that the legislature intended this statute to be one of strict liability, so the 2015 amendment must be interpreted as simply clarifying the legislature's original intent. Consequently, the service providers' argument fails, and the trial court did not err by granting U-Haul summary judgment.

**CONCLUSION**

¶15        For the foregoing reasons, we affirm.

BEENE, J., specially concurring:

¶16        I concur with the majority's determination that A.R.S. § 44-7202 was unambiguous and that the statute did not apply. I write separately, however, because I disagree that the superior court found § 44-7202 to be unambiguous and therefore erred by reviewing the statute's legislative history.

¶17        "In any case involving statutory interpretation we begin with the text of the statute . . . because the best and most reliable index of a statute's meaning is the plain text of the statute." *State v. Christian*, 205 Ariz. 64, 66, ¶ 6 (2003). If the language of the statute is clear, we must "apply it without resorting to other methods of statutory interpretation," such as reviewing legislative history to determine legislative intent. *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11 (2003) (citation omitted).

¶18        The language of § 44-7202 is clear and unambiguous. Because of the clear prohibitions set forth in § 44-7202, it was unnecessary for the superior court to resort to secondary rules of construction to determine its meaning. *See In re Adam P.*, 201 Ariz. 289, 291, ¶¶ 12-13 (App. 2001) (refusing, where statute was clear, to consider argument based on legislative fact sheets); *Hounshell v. White*, 219 Ariz. 381, 388, ¶ 24 (App. 2008) ("The law is the legislation, not the fact sheets or bill summaries. The latter do not always faithfully capture every aspect of the former[.]").

¶19        The superior court did not explicitly find that § 44-7202 was unambiguous and seemingly relied upon § 44-7202's legislative history to

determine that it did not apply. The parties spent considerable time litigating whether § 44-7202 was ambiguous and arguing over the legislative history. The court's in-depth discussion of the legislative history suggests that the court used it to interpret § 44-7202.

**¶20**    For the foregoing reasons, I concur with the majority's determination that the statute was unambiguous and the affirmance of the superior court's grant of summary judgment in favor of U-Haul.



AMY M. WOOD • Clerk of the Court
FILED:  AA