IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

AGUSTIN GONZALEZ GONGORA,
*Appellant*.

No. 2 CA-CR 2013-0096
Filed June 23, 2014

———————————————

Appeal from the Superior Court in Pima County
No. CR20113303001
The Honorable Howard Hantman, Judge

**AFFIRMED**

———————————————

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By David A. Sullivan, Assistant Attorney General, Tucson
*Counsel for Appellee*

Sherick & Bleier, PLLC
By Steven P. Sherick, Tucson
*Counsel for Appellant*

---

**OPINION**

Judge Miller authored the decision of the Court, in which Presiding Judge Vásquez and Chief Judge Howard concurred.

---

M I L L E R, Judge:

**¶1** Agustin Gongora was convicted after a jury trial of one count of voyeurism, after which the trial court suspended sentence and imposed a term of four years' probation. On appeal, he contends there was insufficient evidence to support his conviction because the state failed to prove the victim had a reasonable expectation she would not be viewed. For the following reasons, we affirm the conviction and sentence.

## Factual and Procedural Background

**¶2** We view the evidence in the light most favorable to sustaining the jury's verdict. *See State v. Haight-Gyuro*, 218 Ariz. 356, ¶ 2, 186 P.3d 33, 34 (App. 2008). In September 2011, while C.H. was shopping in a store, Gongora walked up behind her, crouched down, and looked up her dress. The store's loss prevention detective witnessed the incident and it was recorded by the store's security cameras. The store manager asked Gongora to leave the store, and the loss prevention detective wrote down his license plate number when he drove away.

**¶3** After Gongora was arrested, he admitted to police that he looked up C.H.'s dress and said "it was like a romantic thing." At trial he maintained that the state failed to prove all elements of the offense of voyeurism, filing a motion to dismiss and a motion for judgment of acquittal pursuant to Rule 20, Ariz. R. Crim. P., both of which were denied. The jury found him guilty pursuant to A.R.S. § 13-1424, specifically subsection C(2)(d), which prohibits "viewing a person in a manner that . . . allows the viewing of the person's genitalia, buttock or female breast, whether clothed or unclothed,

that is not otherwise visible to the public." Gongora again moved for judgment of acquittal, which the trial court denied. Gongora received four years' probation, as noted above, and deferred registration to the sex offender registry.

**Sufficiency of the Evidence to Support Voyeurism Conviction**

¶4 Gongora argues the plain language and legislative history of the voyeurism statute, A.R.S. § 13-1424, require that the victim reasonably expect not to be viewed from any perspective before a jury could convict a defendant of voyeurism. From this statutory reading, he contends the state presented insufficient evidence that C.H. reasonably expected not to be viewed because the incident occurred while C.H. was in a store where she could be viewed by other customers and employees. Gongora concedes the facts are not in dispute, and both parties agree C.H. was in a retail store open to the public at the time of the viewing, therefore the sufficiency of the evidence argument relies solely on our interpretation of the voyeurism statute.

¶5 Interpretation of a statute requires de novo review. *State v. George*, 206 Ariz. 436, ¶ 6, 79 P.3d 1050, 1054 (App. 2003). "'We interpret statutes to give effect to the legislature's intent. When a statute is clear and unambiguous, we apply its plain language and need not engage in any other means of statutory interpretation.'" *State v. Arellano*, 213 Ariz. 474, ¶ 9, 143 P.3d 1015, 1018 (2006), *quoting Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 14, 110 P.3d 1013, 1017 (2005).

¶6 Under A.R.S. § 13-1424, it is a criminal offense to "knowingly invade the privacy of another person without the knowledge of the other person for the purpose of sexual stimulation." Subsection C defines an invasion of another person's privacy as follows:

For the purposes of this section, a person's privacy is invaded if both of the following apply:

1. The person has a reasonable expectation that the person will not be photographed, videotaped, filmed, digitally recorded or otherwise viewed or recorded;

2. The person is photographed, videotaped, filmed, digitally recorded or otherwise viewed, with or without a device, either:

   a. While the person is in a state of undress or partial dress.

   b. While the person is engaged in sexual intercourse or sexual contact.

   c. While the person is urinating or defecating.

   d. In a manner that directly or indirectly captures or allows the viewing of the person's genitalia, buttock or female breast, whether clothed or unclothed, that is not otherwise visible to the public.

¶7        The voyeurism statute was added in 2006, and we have not yet interpreted it in a published case. 2006 Ariz. Sess. Laws ch. 146, § 1. Gongora relies on *State v. Glas*, 54 P.3d 147 (Wash. 2002), to support his argument that the plain language requires a victim to reasonably expect not to be viewed at all. In *Glas*, Washington's former voyeurism statute criminalized taking photographs of a person "while the person . . . is in a place where he or she would have a reasonable expectation of privacy." *Id.* at 149. Relying on the

word "place," the Washington Supreme Court rejected a reading of its statute that would protect the right of persons to control exposure of their bodies in a public space. *Id.* at 150. Therefore, it concluded an "upskirt" photo taken in a public location was not prohibited under the Washington statute. *Id.* In its analysis, the court compared the Washington statute's requirement that a victim be "in a place where he or she would have a reasonable expectation of privacy" with a California voyeurism statute that applied "under circumstances in which the other person has a reasonable expectation of privacy," finding the latter statute "le[ft] the option open to include" acts committed in "public places." *Id.* at 151-52.

¶8        Although Gongora concedes that Arizona's voyeurism statute does not explicitly refer to a "place," he contends its language implicates the location of the victim, making *Glas* applicable. We disagree. The court in that case specifically relied on the inclusion of the word "place" in the statute, finding that it grammatically "[did] not make sense to apply . . . to a part of a person's body." *Id.* at 150. The language of Arizona's statute does not include such a narrow requirement.

¶9        Moreover, the statute's language does not require that the person reasonably expect not to be viewed *from any perspective*, as Gongora argues. Rather, § 13-1424(C)(1) requires that the person has a reasonable expectation that she will not be viewed in a manner described under § 13-1424(C)(2). A fully-clothed person in a public place has a reasonable expectation that the public will not be able to view parts of her body as if she were not clothed. Thus, the plain language of Arizona's voyeurism statute includes an offense committed while the victim is in a public place.

¶10        Gongora also contends the statute's legislative history supports his interpretation. But legislative history and other means of statutory interpretation are irrelevant and unnecessary when a statute's language is clear and unambiguous, absent a "'clearly expressed legislative intent to the contrary.'" *State v. Estrada*, 201 Ariz. 247, ¶ 19, 34 P.3d 356, 360 (2001), *quoting Mail Boxes, Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). We therefore address Gongora's argument to determine if there is a clear legislative intent contrary to the plain language.

¶11        Gongora's primary legislative history argument relies on draft versions of the statute. *See State v. Barnard*, 126 Ariz. 110, 112, 612 P.2d 1073, 1075 (App. 1980) (successive drafts may be instructive in determining the intent of the legislature).   As originally introduced, Senate Bill 1039 added the voyeurism statute with language similar to its current form, and amended an existing surreptitious photographing statute, A.R.S. § 13-3019, to criminalize mere "view[ing]" without a camera or other device, and to add "in the area underneath a person's skirt" to the list of "circumstances" in which such viewing would be a violation of the statute.[1]  S.B. 1039, Introduced Version, 47th Legis., 2d Reg. Sess. *(*2006).   Before approving the bill, the senate removed the reference to a person's skirt and amended the statute to include a violation when a person is viewed "in a manner that directly or indirectly captures or allows the viewing of the person's genitalia, buttock or female breast, whether clothed or unclothed, that is not otherwise visible to the public," consistent with the provision included in the then-proposed voyeurism statute.    A.R.S. § 13-3019; *see also* S.B. 1039, Senate Engrossed Version, 47th Legis., 2d Reg. Sess. (2006).

¶12        Gongora contends the reference to "upskirt" viewing in the initial draft of the surreptitious photographing statute demonstrates that the legislature intended upskirt viewing to be limited to a surreptitious photography offense.[2]  To the contrary,

---

[1]Until the 2006 amendment, the surreptitious photographing statute required use of a device and that the victim be in a place where he or she would reasonably expect privacy, such as a "restroom, bathroom, locker room . . . [or] bedroom," or that the person be "urinating, defecating, dressing, undressing, nude or involved in sexual intercourse or sexual contact."   2000 Ariz. Sess. Laws ch. 189, § 23.

[2] The practical effect of Gongora's argument is a reduced penalty.   His offense would be a class six felony under the surreptitious photographing statute, rather than a class five felony with sex offender registration at the discretion of the judge under the voyeurism statute.   *See* A.R.S. §§ 13-1424(E) (voyeurism a class five felony), 13-3019(E) (surreptitious viewing without device a class

however, removing the reference to a person's skirt from the final bill strongly suggests the legislature did not intend such a narrow scope. *Lancaster v. Ariz. Bd. of Regents*, 143 Ariz. 451, 458, 694 P.2d 281, 288 (App. 1984) ("'Omission on final enactment of [a] clause of [the] bill originally introduced is strong evidence that [the] Legislature did not intend [the] omitted matter should be effective . . . ."), *quoting State Bd. of Barber Exam'rs v. Walker*, 67 Ariz. 156, 164, 192 P.2d 723, 728 (1948). Additionally, we review the bill actually passed. The enacted statute required that the more serious offense of voyeurism be "for the purpose of sexual stimulation," which is not found in the surreptitious photographing statute.[3] *Compare* A.R.S. § 13-1424(A) *with* A.R.S. § 13-3019(A). Accordingly, the legislative history of the voyeurism statute does not indicate an intent contrary to its plain language, which includes offenses committed in a public place.

**Disposition**

¶13 For the foregoing reasons, we affirm Gongora's conviction and sentence.

---

six felony), 13-3821(C) (discretionary sex offender registration for chapter 14 violations).

[3]Gongora also relies on a statement in the Final Amended Fact Sheet for Senate Bill 1039 that circumstances giving rise to an offense include "when a person is in a . . . location where the person has a reasonable expectation of privacy . . . ." That statement, however, is in the "Background" section of the fact sheet and is describing the former surreptitious photographing statute, not the amendments. Further, "[t]he law is the legislation, not the fact sheets or bill summaries." *Hounshell v. White*, 219 Ariz. 381, ¶ 24, 199 P.3d 636, 643 (App. 2008).