IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

JAVIER SOLIS,
*Appellant*.

No. 2 CA-CR 2014-0084
Filed November 26, 2014

———————————————

Appeal from the Superior Court in Pima County
No. CR20114150001
The Honorable Richard D. Nichols, Judge

**AFFIRMED IN PART AND VACATED IN PART**

———————————————

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Alan L. Amann, Assistant Attorney General, Tucson
*Counsel for Appellee*

Isabel G. Garcia, Pima County Legal Defender
By Scott A. Martin, Assistant Legal Defender, Tucson
*Counsel for Appellant*

**OPINION**

Presiding Judge Kelly authored the opinion of the Court, in which Judge Howard and Judge Vásquez concurred.

K E L L Y, Presiding Judge:

¶1　　　　Following a jury trial, Javier Solis was convicted of criminal damage, endangerment, driving while under the influence of alcohol (DUI), driving with a blood alcohol concentration (BAC) of .08 or more, driving while under the extreme influence of liquor with a BAC of .15 or more, and driving while under the extreme influence of liquor with a BAC of .20 or more. The trial court sentenced Solis to enhanced, presumptive, concurrent terms of imprisonment of ten years and 3.75 years on the criminal damage and endangerment counts, respectively, and time served on the remaining counts.

¶2　　　　Solis argues the trial court abused its discretion in admitting an Arizona Department of Corrections (ADOC) "pen pack"[1] to prove he had two historical prior felony convictions for sentence enhancement purposes. He also contends his enhanced sentences must be vacated because the evidence was insufficient to prove the prior convictions. Finally, he asserts his convictions and sentences for driving with a BAC of .08 or more and extreme DUI with a BAC of .15 or more must be vacated on double jeopardy grounds because they are lesser-included offenses of his conviction for extreme DUI with a BAC of .20 or more. For the following reasons, we vacate Solis's convictions and sentences for driving with a BAC of .08 or more and driving with a BAC of .15 or more, and affirm his convictions and sentences in all other respects.

---

[1]"Pen pack" refers to records kept in compliance with A.R.S. § 31-221, which requires ADOC to "maintain a master record file on each person who is committed to the department." *See State v. Trujillo*, 227 Ariz. 314, n.7, 257 P.3d 1194, 1199-1200 n.7 (App. 2011).

## Factual and Procedural Background

**¶3**      In April 2011, Solis was involved in a multiple-vehicle accident in southeast Tucson.  He was taken to a hospital, where an officer read him *Miranda*[2] warnings and obtained his consent for a blood draw.  A Tucson Police Department criminalist later tested Solis's blood and found that he had a BAC of .24.

**¶4**      Following a jury trial, Solis was convicted as set forth above.  The court then conducted a trial on prior convictions.  Solis objected to the ADOC pen pack as proof of his historical prior convictions, but the court ruled it admissible as a self-authenticating document.  The court further found that the state had proven beyond a reasonable doubt that Solis had two historical prior felony convictions.  Following sentencing, Solis appealed.

## Discussion

### Admissibility of Pen Pack

**¶5**      Solis first argues the trial court abused its discretion in admitting the ADOC pen pack as a self-authenticating document. We generally review the trial court's evidentiary rulings for an abuse of discretion.  *State v. Rutledge*, 205 Ariz. 7, ¶ 15, 66 P.3d 50, 53 (2003).  However, we review de novo the interpretation of court rules.  *See State v. Kearney*, 206 Ariz. 547, ¶ 5, 81 P.3d 338, 340 (App. 2003).

**¶6**      At the prior convictions trial, Solis had argued the pen pack was not admissible as a self-authenticating, certified copy of a public record because it failed to satisfy the requirements of Rule 902(4), Ariz. R. Evid.  In its under advisement ruling, the trial court noted that the pen pack was attached to an "'In-State Exemplification' which certifies that the information in the [pen pack] is true" and that the exemplification had been notarized. Finding the pen pack thus "accompanied by a certificate of acknowledgment that was lawfully executed by a notary public"

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

pursuant to Rule 902(8), the court ruled the pen pack was self-authenticating and admissible.

¶7 The pen pack included an "Automated Summary Report" that contained Solis's personal details, including his birth date, and details regarding his prior convictions and incarceration history. The pen pack also included a photograph of Solis, a fingerprint card, and an "in-state exemplification," in which an ADOC administrator attested that the Automated Summary Report, fingerprint card, and photograph were "true and correct." The in-state exemplification was signed by the ADOC administrator and notarized.

¶8 Solis argues the trial court erred in admitting the pen pack under Rule 902(8) because the notary performed a jurat, rather than the acknowledgment specified in that rule.[3] An acknowledgment is "a notarial act in which a notary certifies that a signer, whose identity is proven by satisfactory evidence, appeared before the notary and acknowledged that the signer signed the document." A.R.S. § 41-311(1). A jurat, by contrast, is "a notarial act in which the notary certifies that a signer, whose identity is proven by satisfactory evidence, has made in the notary's presence a voluntary signature and has taken an oath or affirmation vouching for the truthfulness of the signed document." § 41-311(5).

¶9 We agree with Solis that the notary public performed a jurat, *see* Arizona Department of State, Office of Secretary of State, Notary Public Reference Manual 21-23 (2012), http://www.azsos. gov/business_services/notary/notary_public_reference_manual.pdf; however, we reject Solis's suggestion that the jurat did not fulfill the acknowledgment requirement of Rule 902(8) to make the pen pack self-authenticating. In an acknowledgment, the signer "acknowledges his or her signature," and the notary "verifies the signer's acknowledgment." *Id.* at 21. The notary is "attesting to the

---

[3] Rule 902(8) provides for self-authentication of documents "accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments."

genuineness of the signature." *Id.* In a jurat, the signer "must be placed under oath swearing or affirming that the contents of the document are true and correct." *Id.* at 23. As with an acknowledgment, the notary's signature on the notarial certificate attests that the jurat signer's signature is genuine. *Id.* Thus, the jurat performed here accomplished the same purpose as an acknowledgment: the notary attested to the genuineness of the administrator's signature. We cannot conclude the notary's additional step of verifying that the ADOC administrator took "an oath or affirmation vouching for the truthfulness of the signed document," *id.* at 22, made the act performed unacceptable for self-authentication purposes.

¶10 Although we generally must apply the unambiguous language of a statute or court rule without using other means of statutory construction, *see State v. Gongora*, 235 Ariz. 178, ¶ 10, 330 P.3d 368, 370 (App. 2014), we are not bound to do so where that interpretation would lead to an absurd result, *State v. Baca*, 187 Ariz. 61, 63, 926 P.2d 528, 530 (App. 1996) (when construing a statute or court rule, "we presume that the framer did not intend an absurd result and our construction must be aimed at avoiding such a consequence"). To interpret Rule 902(8) to mean that a notarial act that only attests to the genuineness of a signature is sufficient for self-authentication purposes, but a notarial act that attests to the genuineness of a signature and requires an oath by the signer is not would be absurd.

¶11 Solis contends that, "even if [the] notarial act can be considered to be an acknowledgment, it is only an acknowledgment of [the ADOC administrator's] affidavit, not the 'pen pack' itself." We disagree. The in-state exemplification was stapled on both top corners to the other pages of the pen pack, indicating it was part of the records themselves. *See State v. Trujillo*, 227 Ariz. 314, ¶ 28, 257 P.3d 1194, 1200 (App. 2011) ("[I]t is reasonable to conclude that the pen pack was stapled on both top corners precisely to avoid any lost, additional, or confused pages, and that each page is not intended to be considered separately."). Solis has not suggested that the individual pages of the pen pack should be considered separate documents, and we see no reason to treat the in-state

exemplification as separate from the remaining pages. The exemplification specifically states that the attached documents are true and correct, effectively incorporating them into the exemplification. Although the ADOC administrator's signature and the notary's acknowledgment appeared on the last page of the pen pack, they served to verify the contents of the entire pen pack. *See* A.R.S. § 41-313(A)(1) (certificates of acknowledgment may be endorsed on or attached to instrument).

**¶12** Solis next asserts that, "if the trial court's analysis were correct, any litigant could make any document or package of documents self-authenticating simply by attaching a page bearing a signature that has been acknowledged by a Notary Public, regardless of the source or authenticity of the substantive documents." But that is exactly what Rule 902(8) permits: a document is self-authenticating when accompanied by a certificate of acknowledgment. If there is a question about the genuineness of the documents or the signature, the opponent is free to raise it even if the documents are admitted. *Cf. State v. King*, 213 Ariz. 632, ¶ 11, 146 P.3d 1274, 1278 (App. 2006) (once document admitted under Rule 901, "'the opponent is still free to contest the genuineness or authenticity of the document, and the weight to be given the document becomes a question for the trier of fact'"), *quoting State v. Irving*, 165 Ariz. 219, 223, 797 P.2d 1237, 1241 (App. 1990).

**¶13** Solis maintains that "the trial court's analysis, if correct, would render meaningless Rule 902(2) and Rule 902(4)." Solis relies on *State v. Kennerson*, 695 So. 2d 1367 (La. Ct. App. 1997), to support his assertion that if an acknowledgment is enough to make a document self-authenticating, "there would never be any reason to meet the first and second of Rule 902(2)'s requirements." In *Kennerson*, the state offered out-of-state criminal records, including an exhibit that contained a photograph of the defendant, a criminal history sheet, and a set of fingerprint records, to prove Kennerson had prior convictions. *Id.* at 1373. The exhibit bore a notarial stamp on its first page and was signed by the records custodian and a notary. *Id.* at 1376. The court construed Louisiana's evidentiary rules to require "[d]ocuments produced outside the State of Louisiana" to contain "either official seals, or multiple attestations,

or both." *Id.* at 1375. The court noted that, although it would seem that Louisiana's version of Rule 902(8) applied, "because paragraphs 902(1) and 902(2) are the more particular provisions, those provisions govern." *Id.* at 1376. The court stated, "If the authentication process merely requires an out-of-state deputy to obtain the stamp of an out-of-state notary, then paragraphs 902(1) and 902(2) would be meaningless." *Id.*

¶14 We are not persuaded by Solis's reliance on *Kennerson*. First, we are not bound by decisions from other states. *State v. Cameron*, 185 Ariz. 467, 469, 916 P.2d 1183, 1185 (App. 1996). Moreover, *Kennerson* is distinguishable because the pen pack here was not an out-of-state document, and no Arizona case has held that records of previous convictions, whether from within Arizona or outside the state, must contain "either official seals, or multiple attestations, or both" in order to be authenticated. *Id.* at 1375. Thus, the *Kennerson* court's concern regarding authentication of out-of-state documents does not apply here.

¶15 Nor do we agree that permitting self-authentication of conviction records under Rule 902(8) would render Rules 902(2) and 902(4) meaningless. Rule 902(2) applies to unsealed domestic public documents that are signed by a public officer or employee and certified by "another public officer who has a seal and official duties within" the same entity as the signer, while Rule 902(4) applies to copies of public records that are certified as correct. Neither rule requires an acknowledgment by a notary public, as does Rule 902(8). Rules 902(2), 902(4), and 902(8) simply provide different methods for establishing the authenticity of documents, and each method provides its own distinct measure of reliability. We conclude the trial court did not abuse its discretion in admitting the pen pack under Rule 902(8).

**Sufficiency of Evidence of Prior Convictions**

¶16 Solis argues the state "failed to introduce sufficient proof that [he] had two prior felony convictions" and requests that we vacate his enhanced sentences. Solis acknowledges he did not raise this claim below; accordingly, we review only for fundamental,

prejudicial error.[4] *State v. Robles*, 213 Ariz. 268, ¶ 12, 141 P.3d 748, 752 (App. 2006). "Fundamental error is 'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *Id.*, *quoting State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). "'Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error.'" *Id.* ¶ 13, *quoting State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991).

**¶17**        Solis relies on *State v. Hauss* to argue the state had neither proved its allegations of historical prior felonies through "certified cop[ies] of the conviction[s]" nor shown why it should be excused from that requirement. 140 Ariz. 230, 231, 681 P.2d 382, 383 (1984). He maintains that the pen pack therefore was insufficient evidence of his prior convictions.

**¶18**        In *Hauss*, the state's evidence of the defendant's prior convictions had consisted of testimony from a probation officer who had prepared a presentence report for those convictions. *Id.* at 230, 681 P.2d at 382. "Based solely on his personal knowledge without reference to an official record, the probation officer testified that he had been present in court when the prior judgments of guilt were entered and sentences imposed, and that the appellant was the person so adjudged and sentenced." *Id.* at 230-31, 681 P.2d at 382-83.

**¶19**        Our supreme court affirmed its previous holding in *State v. Lee* that "'[t]he proper procedure to establish the prior conviction is for the state to offer in evidence a certified copy of the conviction'" and "'establish the defendant as the person to whom the document refers,'" emphasizing that "[t]he *Lee* procedure is

---

[4]Solis suggests that his not guilty plea and his "holding the State to its burden to prove its allegations of prior convictions" was sufficient to preserve the issue for appeal. However, objections to the sufficiency of evidence of prior convictions must be made specifically in the trial court to preserve the issue for appeal. *See State v. Robles*, 213 Ariz. 268, ¶¶ 11-12, 141 P.3d 748, 752 (App. 2006).

necessary to ensure that proceedings to determine the existence of prior convictions do not become credibility contests." *Id.* at 231, 681 P.2d at 383, *quoting State v. Lee*, 114 Ariz. 101, 105, 559 P.2d 657, 661 (1976). The court found the probation officer's testimony had been "highly reliable" and affirmed Hauss's sentences, *id.* at 232, 681 P.2d at 384, but, for future cases, the court "mandated" the introduction of "documentary evidence in order to prove prior convictions," "subject to two very limited exceptions." *Id.* at 231, 681 P.2d at 383. The court stated this documentation requirement would be excused only when (1) a defendant has admitted a conviction while testifying in court, or (2) "the state can show that its earnest and diligent attempts to procure the necessary documentation were unsuccessful for reasons beyond its control and that the evidence introduced in its stead is highly reliable." *Id.*

¶20 In *Robles*, we addressed virtually the same issue Solis now raises on appeal. 213 Ariz. 268, ¶ 11, 141 P.3d at 752. In that case, we explained that "the focus in *Hauss* was on the need for reliable documentary evidence, rather than merely testimonial evidence (with its potential 'credibility contests' and 'unfair[ness] to defendants'), to substantiate the fact of a prior conviction." *Id.* ¶ 15, *quoting Hauss*, 140 Ariz. at 231, 681 P.2d at 383 (alteration in *Robles*). We concluded that "[w]hen, as here, the trial court's finding of prior convictions is primarily based on such documentary evidence, the concerns expressed in *Hauss* about 'non-documentary evidence [being] offered to establish the fact of a prior conviction' are dissipated." *Id.*, *quoting Hauss*, 140 Ariz. at 232, 681 P.2d at 384 (alteration in *Robles*). Thus, we stated, "Although the preferred method of proving prior convictions for sentence-enhancement purposes is submission of certified conviction documents bearing the defendant's fingerprints, courts may consider other kinds of evidence as well." *Id.* ¶ 16 (citation omitted). We noted that our supreme court had accepted a commitment record as sufficient proof of a defendant's prior conviction. *Id.*, *citing State v. Nash*, 143 Ariz. 392, 403, 694 P.2d 222, 233 (1985).

¶21 Solis argues that, unlike this case, the defendant in *Robles* did not object to the documentary evidence, which Solis claims was "a key to that holding." Like Solis, the defendant in

*Robles* did not object to the sufficiency of the evidence of his prior convictions in the trial court. *Id.* ¶ 12. Here, Solis objected only to the admissibility of the pen pack as self-authenticating, which is irrelevant to the question of whether it was sufficient evidence of his prior convictions. He also asserts "there was no supporting testimonial evidence bolstering the 'pen pack' in Appellant's case, as there was in *Robles*." But we made clear in *Robles* that documentary evidence of prior convictions is sufficient. *See id.* ¶¶ 15-16. Moreover, we have concluded that pen packs alone may be sufficient to prove prior convictions. *See State v. Trujillo*, 227 Ariz. 314, ¶ 29, 257 P.3d 1194, 1200 (App. 2011). Solis's attempt to distinguish *Robles* is unavailing.

**¶22** Here, the pen pack contained a photograph that matched a separately admitted photograph that the trial court found depicted Solis. And the date of birth on the separately admitted photograph and the "TPD Crime Lab: Alcohol Notes" matched the date of birth in the pen pack. As we stated in *Robles*, it is "notable that [Solis] has not claimed, either below or on appeal, that he is not the person who was convicted." 213 Ariz. 268, n.4, 141 P.3d at 753 n.4.[5] Solis has not argued the information contained in the pen pack was incorrect or that it failed to show he had two historical prior felony convictions. We thus conclude the trial court did not commit fundamental error by finding Solis had two historical prior felony convictions for sentence enhancement purposes.

**Double Jeopardy**

**¶23** Solis argues the trial court should have vacated his convictions for driving with a BAC of .08 or more and extreme DUI with a BAC of .15 or more because they are lesser-included offenses of extreme DUI with a BAC of .20 or more. He concedes he did not object to the convictions below; accordingly, we review only for fundamental, prejudicial error. *State v. Price*, 218 Ariz. 311, ¶ 4, 183 P.3d 1279, 1281 (App. 2008). "[A] violation of double jeopardy is

---

[5]Indeed, the state offered certified copies of documents from the prior cases, to which Solis did not object, but those documents never were admitted.

fundamental error." *Id.* The state concedes the claim of error and "agrees that the correct remedy is to vacate the two lesser included convictions." We nevertheless examine this issue because we are not bound by the state's concession, *State v. Sanchez*, 174 Ariz. 44, 45, 846 P.2d 857, 858 (App. 1993), and we will not ignore fundamental error when we find it, *State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App. 2007).

**¶24** "'The Double Jeopardy Clause . . . bars multiple punishments for the same offense.'" *State v. Siddle*, 202 Ariz. 512, ¶ 8, 47 P.3d 1150, 1153 (App. 2002), *quoting State v. Powers*, 200 Ariz. 123, ¶ 5, 23 P.3d 668, 670 (App. 2001). A lesser-included offense is the same offense as the greater if the lesser "'is, by its very nature, always a constituent part of the greater offense, or whether the charging document describes the lesser offense even though it does not always make up a constituent part of the greater offense.'" *Id.* ¶ 10, *quoting State v. Chabolla-Hinojosa*, 192 Ariz. 360, ¶ 12, 965 P.2d 94, 97 (App. 1998) (emphasis omitted). We have stated, "[W]hen the only difference between two DUI charges is the BAC threshold, a court cannot allow a conviction on the lesser charge to stand." *State v. Nereim*, 234 Ariz. 105, ¶ 24, 317 P.3d 646, 653 (App. 2014). Here, the only difference between the DUI charges was the BAC threshold. *See* A.R.S. § 28-1381(A)(2) (defining DUI); A.R.S. § 28-1382(A) (defining extreme DUI). Thus, we conclude that the charges of driving with a BAC of .08 or more and extreme DUI with a BAC of .15 are lesser-included offenses of extreme DUI with a BAC of .20 or more, and double jeopardy barred Solis's convictions for those charges.

## Disposition

**¶25** For the foregoing reasons, we vacate Solis's convictions and sentences for driving with a BAC of .08 or more and for extreme DUI with a BAC of .15 or more. We affirm his convictions and sentences in all other respects.