NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JULIE JEANNIE MASON, *Appellant.*

No. 1 CA-CR 22-0025
FILED 12-8-2022

---

Appeal from the Superior Court in Mohave County
No. S8015CR202000167
The Honorable Derek C. Carlisle, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Jill L. Evans Attorney at Law, Flagstaff
By Jill L. Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Peter B. Swann[1] joined.

---

**C R U Z**, Judge:

¶1        Julie Jeannie Mason appeals the superior court's order denying her motion to suppress, as well as her conviction and sentence for one count of possession of dangerous drugs for sale.  We affirm in part and vacate in part.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In January 2020, Arizona Department of Public Safety Trooper Thomas Callister conducted a traffic stop on Mason's rental car for an obvious window tint violation.  After approaching the car, Trooper Callister observed numerous duffel bags in the back seat and smelled a strong, chemical odor coming from the passenger window.  Trooper Callister observed Mason's hand shaking when handing him her driver's license and rental car contract.  Trooper Callister then had Mason sit in his patrol car while he prepared the warning for the window tint violation.

¶3        While in his patrol car, Mason told Trooper Callister she and her husband, Maurius Mason, traveled from Iowa to California to pick up Mason's aunt.  Mason also said they returned only with the aunt's clothing in the duffle bags because the aunt decided to fly back instead.  While Trooper Callister printed the warning, he walked back to speak with Maurius who confirmed the couple traveled to visit Mason's aunt in California.  But Maurius claimed the duffle bags contained his and Mason's

---

[1]        Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court.  He retired effective November 28, 2022.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to Arizona Revised Statutes ("A.R.S.") section 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

clothing and trip purchases, not the aunt's clothing. Trooper Callister then returned to his patrol car and again asked Mason what the duffle bags contained. Mason repeated the luggage contained her aunt's clothing and added she and Maurius each had one small bag.

**¶4** Both passengers denied having anything illegal in the car. Maurius denied consent to search, and Mason gave consent to search only her belongings. Trooper Callister then requested a canine unit, and the dog alerted to the presence of drugs. Trooper Callister searched the car and found numerous shrink-wrapped packages inside the duffle bags later confirmed to be 362 pounds of methamphetamine.

**¶5** The State charged Mason with both possession and transportation of dangerous drugs for sale. Before trial, Mason moved to suppress as unconstitutionally precluded all evidence obtained after Trooper Callister issued the traffic warning. Mason argued Trooper Callister exceeded the scope of the traffic stop and lacked reasonable suspicion to search the car. The superior court denied the motion finding Trooper Callister had reasonable suspicion to detain Mason after printing the warning.

**¶6** A jury convicted Mason of both charges, and the superior court sentenced her to a twelve-year prison term. Mason timely appealed, and we have jurisdiction pursuant to Arizona Constitution Article 6, Section 9, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

I.    Mason's Motion to Suppress

**¶7** Mason argues the superior court erred in denying her motion to suppress. We review a denial of a motion to suppress for an abuse of discretion. *State v. Cornman*, 237 Ariz. 350, 354, ¶ 10 (App. 2015). We view the facts in the light most favorable to upholding the superior court's ruling, and we only consider the facts presented at the suppression hearing. *State v. Starr*, 222 Ariz. 65, 68, ¶ 4 (App. 2009). We review the court's legal conclusions de novo, *State v. Newell*, 212 Ariz. 389, 397, ¶ 27 (2006), and we must affirm the superior court if its ruling "was legally correct for any reason," *State v. Perez*, 141 Ariz. 459, 464 (1984).

**¶8** Mason argues Trooper Callister improperly prolonged the traffic stop because (1) Mason did not consent and (2) Trooper Callister

lacked reasonable suspicion.[2] The Fourth Amendment to the United States Constitution prohibits the government from conducting unreasonable searches and seizures even in brief investigatory stops of people or vehicles. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations and quotation marks omitted). An officer may not extend a traffic stop any longer than necessary to accomplish the traffic stop's mission, and the officer's authority for the traffic stop ends when the "tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 348-49 (2015).

**¶9** After the officer conducting a routine traffic stop receives the driver's valid driver's license and proof of entitlement to operate the vehicle, the officer must let the driver leave without further delay or questioning unless (1) the traffic stop becomes consensual or (2) during the traffic stop "the officer gains a reasonable and articulable suspicion that the driver is engaged in illegal activity." *State v. Teagle*, 217 Ariz. 17, 23, ¶ 22 (App. 2007) (citation and quotation marks omitted). Reasonable suspicion is more than a mere hunch, but "the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory detention." *Id.* at 23, ¶ 25. In determining whether a law enforcement officer had reasonable suspicion, the court may not examine each factor individually but must consider all factors collectively. *Id.* at 24, ¶ 25.

**¶10** Mason relies on *State v. Sweeney*, 224 Ariz. 107 (App. 2010), for the proposition that her continued detention after a completed traffic stop was not supported by reasonable suspicion. But in *Sweeney*, we held that the continued detention of a driver was unsupported by reasonable suspicion because the nine factors upon which the officer relied "did not give rise to objective reasonable suspicion of anything" and a "reasonably prudent person's suspicions would not be raised after observing" those factors. *Id.* at 113, ¶ 24. We further held that those factors, which included long distance travel to purchase a vehicle, a nervous driver, vague answers, a strong smell of deodorizer, a clean car with no personal effects, an atlas on the front passenger seat, an out of state plate, and a foreign driver driving far back in the seat while sitting in a rigid upright position, "resemble[d] those employed in drug courier profiles, which are now inadmissible at trial as evidence of guilt." *Id.* at ¶¶ 23, 25. The facts of Mason's case are distinguishable.

---

[2] The parties do not challenge the constitutionality of the initial stop; therefore, we do not address the issue.

¶11 While Mason did not consent to prolonging the traffic stop, consent is not required when law enforcement has reasonable suspicion. *See Teagle*, 217 Ariz. at 23, ¶ 22. The facts presented at the suppression hearing support the conclusion that Trooper Callister had at least reasonable suspicion to prolong the traffic stop. Trooper Callister testified he suspected Mason was involved in criminal activity because (1) Mason was driving a rental car with dark window tint, which was highly unusual; (2) Mason's hand shook when handing him her driver's license and rental car contract; (3) the back seats were folded down and covered with multiple, large duffle bags; (4) he smelled a strong, chemical odor coming from the passenger window; (5) Mason was "extremely" and "exceptionally" nervous; (6) the passengers' stories conflicted on the purpose of the trip and the contents of the duffle bags; (7) Mason became increasingly nervous throughout the stop; (8) he saw Mason's heartbeat "vigorously pulsing on her chest and stomach"; and (9) the passengers were returning from California, a source state for drugs. Unlike in *Sweeney*, Trooper Callister smelling a strong, chemical odor from inside the vehicle, together with the other factors observed, gave rise to articulable reasonable suspicion that crime may be afoot. The court did not err in denying Mason's motion to suppress all evidence obtained after Trooper Callister printed the warning for the window tint violation.

II.     Double Jeopardy

¶12 Mason argues the superior court erred in imposing multiple sentences for the same offense in violation of constitutional double jeopardy protections. In its answering brief, the State concedes possession of dangerous drugs for sale is a lesser-included offense of transportation of dangerous drugs for sale and requests we vacate Mason's conviction and sentence for possession. We are not bound by the State's concession of error, *see State v. Solis*, 236 Ariz. 242, 249, ¶ 23 (App. 2014), and we review whether one crime is a lesser-included offense of another de novo, *In re James P.*, 214 Ariz. 420, 423, ¶ 12 (App. 2007).

¶13 Mason claims her conviction for possession of dangerous drugs for sale is a lesser-included offense of transportation of dangerous drugs for sale, and thus we should vacate her conviction and sentence for possession. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article 2, Section 10, of the Arizona Constitution bar multiple punishments for the same offense. A lesser-included offense contains some but not all elements of the greater offense so that it is impossible to commit the greater offense without also committing the lesser one. *State v. Celaya*, 135 Ariz. 248, 251 (1983). A

5

defendant may not be convicted of an offense and a lesser-included offense because they are the same under double jeopardy principles. *State v. Ortega*, 220 Ariz. 320, 324, ¶ 9 (App. 2008) (citation omitted). "[W]hen the charged possession for sale is incidental to the charged transportation for sale, it is a lesser-included offense" because a person "cannot possibly be guilty" of transportation for sale without also being guilty of possession for sale. *State v. Chabolla-Hinojosa*, 192 Ariz. 360, 363, ¶¶ 12-13 (App. 1998).

¶14　　　　It is settled in Arizona that possession is a lesser-included offense of transportation. *Id.*; *State v. Cheramie*, 218 Ariz. 447, 449, ¶ 11 (2008). The superior court erred in sentencing Mason for both possession and transportation in violation of constitutional double jeopardy protections. We therefore vacate Mason's conviction and sentence for possession of dangerous drugs for sale.

## CONCLUSION

¶15　　　　We affirm in part and vacate in part.



AMY M. WOOD • Clerk of the Court
FILED:　AA