239 P.2d 353

**STATE v. CHITWOOD.**

No. 1016.

Supreme Court of Arizona.

Dec. 24, 1951.

Opinion Modified on Rehearing Feb. 25, 1952.

See 73 Ariz. 314, 240 P.2d 1202.

------◆------

Fred O. Wilson, Atty. Gen., Earl Anderson, Asst. Atty. Gen., Robert Morrison, County Atty., Pima County, Morris K. Udall, Chief Deputy County Atty., Tucson, for appellant.

Scruggs, Butterfield & Rucker, Tucson, for appellee.

PHELPS, Justice.

This is an appeal by the state from an order granting defendant's motion in arrest of judgment and from the order granting his motion for a new trial, and from the whole of said order.

The defendant was charged by indictment with having, during the fall of the year 1946, wilfully, unlawfully and feloniously agreed and conspired with one Walter Porter to operate a gambling casino, that is, dice games, roulette, twenty-one, etc., upon premises owned by the defendant near Tucson, Arizona; and that he and the said Walter Porter thereafter pursuant to such conspiracy during the fall and winter of 1946 and the winter and spring of 1947, did operate such gambling games upon said premises in violation of law.

Prior to the filing of this indictment the defendant together with a number of other witnesses including Walter Porter, Harold Fisher, Henry Porter, John E. Gregory, Raymond L. Harris, Elmore Wesley Sheppard, James Fant, and Jack Bayer were called as witnesses before a grand jury then in session in Pima County convened primarily for the purpose of ascertaining whether public officials were receiving bribes as a consideration for permitting gambling to be carried on in Pima County.

At the time defendant and the other witnesses were called before the grand jury they were informed in substance that under the constitution, article 2, section 19, if they had knowledge or were in possession of any facts tending to establish the guilt of any other person or corporation charged with bribery they were not excused from giving testimony or producing evidence when called upon to do so on the ground that it might tend to incriminate them under the laws of the state, but that no person could be prosecuted, or subject to any penalty or forfeiture for, or on account of any transaction, matter or thing concerning which they might testify.

The defendant did not take the witness stand at the trial of the cause and the other witnesses appearing before the grand jury with the exception of the witnesses Bayer, Fant and Sheppard refused to answer any questions concerning gambling in Pima County presumably upon the ground that it might be self-incriminating, which claim the court honored. At the close of the state's case and at the close of the entire

evidence counsel for defendant presented motions for an instructed verdict. These motions were denied and the cause submitted to the jury under instructions designed to cover the law involved and a verdict of guilty was returned. Thereafter the court granted defendant's motion in arrest of judgment upon the ground that "the indictment does not charge defendant with an offense since the commission of the crime of gaming, which was the purpose of the conspiracy charged, required concerted action of two or more persons and was therefore not indictable." The court also granted defendant's motion for a new trial upon the grounds:

1. That all the testimony adduced against the defendant was that of accomplices to the crime and the state failed to corroborate same as required by law;

2. That it appeared from the record that the defendant prior to indictment was required to testify before the grand jury as to some matters concerning which he was indicted and that he was thereby immune from prosecution for the offense charged;

3. Upon the ground that the court had erred in honoring the claims of privilege by witness Bayer as to questions concerning gaming operations by said witness for the reason that by law the witness was immune from prosecution for any offense, concerning which he testified;

4. Upon the ground that the court should have directed a verdict in favor of the defendant in accordance with defendant's motion because of misconduct of the county attorney before the grand jury;

5. Upon the ground that the witness Bayer should not have been permitted to testify because of the failure of the county attorney to include his name in the bill of particulars requested by defendant; and that the motion in arrest of judgment was granted upon the ground that the indictment did not charge the defendant with an offense for the reason that the commission of gambling being the purpose of the conspiracy which requires concerted action of two or more persons and was therefore not indictable.

The state designates as error the trial court's ruling in granting defendant's motion in arrest of judgment: That the court erred in ruling that the conspiracy agreement merged in the offense of gaming and was not indictable;

The court erred in granting defendant's motion for a new trial:

1. In holding that the witnesses Sheppard, Fant and Bayer were all accomplices to the crime of conspiracy to violate the gambling statute of Arizona and that it was necessary that their testimony be corroborated by other evidence in order to convict as required under the provisions of section 44–1819, A.C.A. 1939;

2. The court erred in holding that under the provisions of section 43–2715, A.C.A. 1939, and article 2, section 19, of the Ari-

zona Constitution the defendant was immune from prosecution because he had been required to testify before the grand jury;

3. That the court erred in reversing its ruling made at the trial to the effect that the witness Bayer was entitled to the claim of privilege when asked on cross-examination concerning gambling operations at the Chanticleer Club which he was then operating, and in granting the motion for a new trial holding that he was not entitled to the claim of privilege;

4. The court erred in holding that the county attorney was guilty of misconduct in conducting the investigation before the grand jury;

5. That the court erred in holding that Bayer should not have been permitted to testify at the trial because his name had not been indorsed on the indictment or furnished defendant in the bill of particulars.

The first assignment of error is based upon the court's order granting defendant's motion in arrest of judgment on the ground that the indictment did not charge a public offense because the conspiracy charged requires a concerted action of two or more persons.

The agreement charged was one between Chitwood and Porter to conduct gambling games in Pima County as set forth in the indictment. It was not an agreement to gamble between themselves but with third persons.

The law is that where the agreement is to commit an offense which can only be committed by the concerted action of the two persons to the agreement, such agreement does not amount to a conspiracy. This would be true of an agreement to commit adultery or of an agreement where one person agrees with a public official to pay the latter a bribe in consideration of some illegal benefit to be received by the payer. Under such circumstances the agreement to commit adultery and the agreement to commit bribery merge in the completed act. If Chitwood and Porter had agreed to enter into a gambling game between themselves then the conspiracy agreement to gamble would have merged in the act of gambling. United States v. Dietrich, 8 Cir., 126 F. 664.

The defendant-appellee cites 11 Am.Jur.,Conspiracy, Sec. 20, in support of his theory of merger or of concerted action. Section 20 begins with this sentence: "A familiar principle is that an agreement to commit an offense which can be committed only by the concerted action of the two persons to the agreement does not amount to a conspiracy. * * *"

Further in the same section we find the following: " * * * Likewise if the alleged conspiracy is not between the immediate participants in the offense, but, between one or more of such participants and a third party or parties, the theory of the rule would render it inapplicable, even though the substantive offense is one which requires concerted action. * * *"

This completely refutes the correctness of the court's ruling on the point that the indictment does not state an offense against the state.

 The first ground upon which the court granted defendant's motion for a new trial, and assigned as error by the state, is that all of the testimony adduced against the defendant was that of accomplices to the crime and the state failed to corrobate the same as required by law. We are of the view that this was error. In discussing the question of who are accomplices we stated in the case of Baumgartner v. State, 20 Ariz. 157, 178 P. 30, 32, that in order to make one an accomplice to a crime: "* * * The 'aiding' or 'abetting' contemplated by the statute is some positive act in aid of the commission of the offense—a force physical or moral joined with that of the perpetrator in producing it. The aider or abettor must stand in the same relation to the crime as the criminal, approach it from the same angle, touch it at the same point. Such is not the case with the purchaser. His approach to the crime is from the other side. The whole force, physical or moral, that goes to the production of the crime, as such, is the seller's. * * *".

This involved the sale of intoxicating liquors under the state prohibition act. It is true it differs from this case in that the purchaser of the intoxicating liquors under the prohibition act was not guilty of an offense while a person participating in gambling with one who operates a gambling house in the conduct of gaming is guilty of an offense. We do not believe this changes the principle enunciated in the Baumgartner case, supra, and here hold that it applies in gaming cases as well. To the same effect is the case of State v. Wakely, 43 Mont. 427, 117 P. 95; People v. Emerson, Sup., 5 N.Y.S. 374, 6 N.Y.Cr. R. 157; and State v. Smiley, 167 Wash. 342, 9 P.2d 370. Cases found in Oklahoma and Oregon under similar statutes adhere to a contrary view but we believe that the reasoning in the Montana and Washington cases is more sound.

The second ground upon which the court ruled in support of its order for a new trial and assigned here as error is that it appeared from the record that the defendant prior to his indictment was required to testify before the grand jury as to some matters concerning which he was indicted and that he was thereby immune from prosecution. We will pass this for discussion later.

 The next ground is that the court erred in honoring the claim of privilege of the witness Bayer as to questions concerning gaming operations being permitted at his place of business shortly before the grand jury hearing, for the reason that the witness was immune from prosecution for any offense concerning which he testified. This ground for a new trial is wholly without merit. Bayer had testified before the grand jury concerning gambling at Chitwood's. Under the law he was immune from prosecution for gambling at Chit-

wood's and Chitwood's alone. He was not asked concerning gambling at any other place when he appeared before the grand jury. The state did not ask him at the trial of this cause whether he was conducting gambling or permitting gambling to be carried on at the Chanticleer Club operated by him, for the simple reason that such evidence was wholly foreign to the issues involved in the instant case.

On cross-examination counsel for defendant sought to impeach Bayer's credibility by bringing to the attention of the jury the fact that he (Bayer) was permitting gambling at his place or had been shortly prior to the convening of the grand jury. It was wholly immaterial for any purpose whatsoever whether Bayer was permitting gambling to be conducted at his place two years after the gambling incident at Chitwood's place concerning which he testified. Testimony concerning gambling operations at his place of business under such circumstances would not have rendered him immune from prosecution by the state. Had the state questioned him concerning such matters before the grand jury the situation would have been different.

There is a further reason why the court's ruling at the trial on this point was in error and that is, it did not tend to impeach Bayer's credibility as a witness. Reputation may not be proved by particular incidents of misconduct. Baumgartner v. State, supra.

The trial court next assigns as a reason for granting the motion for a new trial that he should have granted defendant's motion for an instructed verdict at the close of the trial for the reason that the county attorney had been guilty of misconduct in procuring the testimony of witnesses before the grand jury who were called upon to testify in the trial of this case. This contention is something that is entirely new to this court in criminal jurisprudence. It was not developed during the trial of this case that the county attorney was guilty of any misconduct before the grand jury and had evidence been offered could not have been received by the court without prejudicial error to the state.

The next and last ground upon which the motion for a new trial was granted was that Bayer should not have been permitted to testify at the trial because of the failure of the county attorney either to indorse his name on the indictment or to include it in the bill of particulars requested by the defendant. The state's position in this case is that it was surprised at the ruling of the court that the witnesses Fant and Sheppard were accomplices so that a conviction therefore could not be had upon their testimony alone and that this ruling of the court forced it to call Bayer as a witness. As stated above we think it was clearly error for the court to so hold. However, even if the county attorney had neglected

through oversight or otherwise to indorse Bayer's name upon the indictment or to furnish it to defendant in a bill of particulars such omission would not of itself justify the trial court in granting the motion for a new trial, under the circumstances of this case. The defendant was expressly informed by the court upon overruling the defendant's objection to Bayer's testimony that the court would allow the defense a continuance of the trial for such time as the defendant reasonably required to meet and refute the testimony of Bayer. The defendant asked for no continuance. The presumption is that he needed none and the law is that he waived any legal right which he had to challenge the propriety of the testimony given by Bayer.

We will now revert to the second ground upon which the motion for a new trial was granted which we believe presents a serious question. The transcript of the evidence before the grand jury reveals the following (questions propounded to Chitwood by Mr. Holmes, one of the attorneys for the state):

"Q. Before we start questioning you here before this Grand Jury, I would like to advise you as to certain matters pertinent to your questioning. According to the constitution of the State of Arizona, any testimony that you may give before this body concerning the *bribing of any person, concerning the bribing of a public official,* whether you had a direct part or a secondary part in that, or whether it involves you in any way or not, you are given absolute immunity from prosecution on that. *However, you are under a duty and obligation to testify to any matters of bribery.* You are given no right to refuse to testify on grounds that it may incriminate you, because, by virtue of the laws of Arizona, you cannot be incriminated on that. However, we do have a Statute in the State of Arizona on perjury. Any person who perjures himself before this body may be punished by confinement in the State prison for not less than one year or more than fourteen years. Do you understand that, Mr. Chitwood? (Emphasis supplied.) A. Yes, sir, I think so.

"Q. You are willing to testify now, voluntarily and under oath, the testimony that you will give will be the truth; is that correct? A. Yes, sir."

Again a little later on he was given the same advice by Mr. Morrison, county attorney, at the request of the foreman of the grand jury. The defendant was at all times evasive and the jury was justly convinced that he was not telling the whole truth. He was repeatedly informed that there was no intention to prosecute him for bribery.

He was never advised that under the provisions of section 43–2715, supra, that any testimony he gave concerning gambling would render him immune from prosecution for gambling. Under the provisions of that section any testimony he gave relating to gambling rendered him immune

170

from prosecution for any offense denounced in article 27 of the Act whether he was advised of the fact or not. Its language obviates the necessity of claiming his privilege under the constitution. Section 10, article 2 of the constitution further places safeguards around the defendant covering other and different offenses of which defendant was not advised by the attorney for the state. Section 10, supra, provides: "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

In view of the conclusions we have reached it is not essential for us to determine in this case whether it was necessary for Chitwood to claim his privilege under this provision of the constitution in order to avail himself of its protection.

■■■ The constitutional provision, section 19, article 2, supra, gave Chitwood as a witness testifying before the grand jury immunity from prosecution for bribery or any other offense he was required to disclose in testifying to facts which tended to establish the guilt of any other person or corporation charged with bribery. Section 43–2715, A.C.A.1939, relates to gaming and bucket shops and the immunity given therein is limited to the offenses enumerated in that article. The same rule applies as well to section 19, article 2 of the constitution, supra, except where as in the instant case the state goes far beyond the legitimate scope of the inquiry

and either by design or inadvertance brings from the witness incriminating statements in no wise connected with the subject of the inquiry or necessary to the establishment of the guilt of the person or corporation under investigation for bribery.

Chitwood's testimony concerning his arrangement with Walter Porter to open, operate, and conduct gambling games at the Chitwood place was not pertinent to the question of bribery. It was not necessary to establish nor did it tend to establish the crime of bribery of public officials or to establish the guilt of any public official in accepting a bribe. It did, however, definitely establish the conspiracy agreement with Porter as charged in the indictment. He gave this testimony under the belief that he was exempt from prosecution. He was not advised when the questions no longer pertained to the establishment of the guilt of any person for bribery. We believe it would be too much to require of a layman under such circumstances to impose upon him the duty to determine when the questions ceased to relate to bribery and began to touch upon matters concerning which he was entitled to claim his constitutional immunity and refuse to answer such questions. Such an action would be at the risk of punishment for contempt in the event he was wrong in the determination of a question of law as to what questions did and what did not fall within the constitutional exemption. We are not willing to concede that defendant Chitwood is other than a layman even though he may have an

ancient law degree. Such a proceeding closely resembles entrapment.

■ We are not· to be understood as even vaguely intimating that the county attorney had such a thing in mind. We are sure that it was not his purpose to do so and we fully appreciate the obstacles the state had to overcome in this matter. A reading of the transcript of the evidence before the grand jury convinces us that it is honeycombed throughout with perjury and that the wrong-doers whom the state sought to reach were protected even though the witnesses called to testify were assured of immunity from prosecution under the law. But we believe it to be more important to preserve the constitutional rights of citizens than to secure the conviction of a defendant, even though he may be guilty, by brushing aside such rights. In this particular, however, we desire to point out that the witnesses who refused to answer questions at the trial of this cause concerning their gambling activity at Chitwood's were not entitled to any constitutional privilege for the reason that under the provisions of section 43–2715, supra, they were immune from prosecution for gambling at Chitwood's. The court erred in honoring the privilege.

■ Because defendant was required to give evidence against himself before the grand jury which tended to convict him of the crime of conspiracy to conduct gambling in Pima County he was rendered immune from prosecution under the constitution of this state.

The order of the trial court in granting the motion for a new trial upon the ground last stated is affirmed, and the cause is remanded with instructions to dismiss.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.