IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

SEP 24 2009

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,           )
                                )        2 CA-CR 2008-0157
                    Appellee,   )        DEPARTMENT B
                                )
        v.                      )        O P I N I O N
                                )
REGINA MARIE LOCKWOOD,          )
                                )
                    Appellant.  )
_____ )


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20054806

Honorable Charles S. Sabalos, Judge
Honorable John S. Leonardo, Judge

REVERSED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Alan L. Amann                                    Tucson
                                                          Attorneys for Appellee

Natasha Wrae                                                             Tucson
                                                          Attorney for Appellant


V Á S Q U E Z, Judge.

¶1 After a jury trial, Regina Lockwood was convicted of conspiring to conceal or abandon a human body in violation of A.R.S. § 13-2926. The trial court suspended imposition of sentence and placed her on three years' probation. On appeal, Lockwood argues the fetal remains at issue in this case do not constitute a "dead human body" for purposes of the statute and, absent any evidence of a live birth, her conviction must be reversed. For the reasons that follow, we reverse Lockwood's conviction and vacate her probationary term.

**Factual and Procedural Background**

¶2 Because this case presents a purely legal question, we include only those facts necessary for an understanding of that issue.[1] In October 2005, police officers searched the backyard of the house occupied by Lockwood and her boyfriend, Nicholi Grimm, in response to a report that a fetus had been buried there. They found an intact fetus that Lockwood admitted she had miscarried the previous month and Grimm had buried. Pursuant to § 13-2926, Lockwood was charged with conspiracy to commit abandonment or concealment of a dead human body, a class five felony.

---

[1]The legal question we address here is limited to whether the legislature intended § 13-2926 to apply to fetal remains. Nothing in this opinion purports to address any broader questions, such as when life begins, that may be evoked by this issue.

¶3　　　　Lockwood moved to dismiss, contending the remains of a stillborn fetus did not constitute a human body under § 13-2926.[2] At a hearing on the motion, the state conceded it could not prove the remains had resulted from a live birth but argued the statute covered "what someone does with a fetus, stillborn or not, in any stage of development." The trial court denied Lockwood's motion and stayed the proceedings to allow her to file a petition for special action in this court. After hearing oral argument, we declined to accept jurisdiction. At a subsequent pretrial hearing, the trial court determined that the issue whether a fetus was a human body for purposes of the statute was not "a jury question . . . [but] a legal question for the Court of Appeals." It therefore instructed the jury that "the baby in this case was a dead human body." Lockwood was convicted and placed on probation as noted above.[3] This appeal followed.

**Discussion**

¶4　　　　We review issues of statutory interpretation de novo. *State v. Ontiveros*, 206 Ariz. 539, ¶ 8, 81 P.3d 330, 332 (App. 2003). "Our goal in interpreting statutes is to ascertain and give effect to the intent of our legislature," and the plain language of the statute

_____

[2]Section 13-2926(A) provides: "It is unlawful for a person to knowingly move a dead human body or parts of a human body with the intent to abandon or conceal the dead human body or parts."

[3]Pursuant to a plea agreement, Grimm pled guilty to attempted abandonment or concealment of a human body and was placed on probation for three years. Because the jury found Lockwood guilty as charged, it did not consider whether she was guilty of failing to report a death pursuant to A.R.S. § 11-593, which the trial court characterized as a lesser-included offense.

is the best and most reliable indicator of that intent. *State v. Garcia*, 219 Ariz. 104, ¶ 6, 193 P.3d 798, 800 (App. 2008). In construing the criminal law, we must take account of "a criminal defendant's constitutional right to due process: 'The first essential of due process is fair warning of the act which is made punishable as a crime.'" *Vo v. Superior Court*, 172 Ariz. 195, 200, 836 P.2d 408, 413 (App. 1992), *quoting Keeler v. Superior Court*, 470 P.2d 617, 626 (Cal. App. 1970); *see also* A.R.S. § 13-101(2) (declaring public policy of state and general purpose of criminal code to "give fair warning of the nature of the conduct proscribed"). "When the meaning of a statute is unclear or subject to more than one interpretation, the rule of lenity requires us to resolve any ambiguity in favor of the defendant." *Reinesto v. Superior Court*, 182 Ariz. 190, 192, 894 P.2d 733, 735 (App. 1995).

¶5        In *Vo*, Division One of this court considered whether the first-degree murder statute then in effect, which prohibited causing the death of a "human being," was applicable to the death of a fetus caused by the shooting death of its mother. 172 Ariz. at 198, 836 P.2d at 411. Reviewing "the way in which the legislature has referred to a fetus in other sections of the criminal code" and "noncriminal areas of Arizona statutory law in which the legislature has protected unborn children," the court concluded that "the legislature did not intend a fetus to constitute a 'person' for all purposes."[4] *Id.* at 201-02, 836 P.2d at 414-15.

---

[4]*Vo* noted critical distinctions between the question of criminal law presented in that case and the tort issues involved in *Summerfield v. Superior Court*, 144 Ariz. 467, 698 P.2d 712 (1985), which held a viable fetus is a person under Arizona's wrongful death statute. *Vo*, 172 Ariz. at 205-06, 836 P.2d at 418-19. In particular, courts do "not have the power to expand the criminal law through evolving common law principles." *Id.* at 206, 836 P.2d at

4

The court noted that, "where the legislature intends to protect the unborn, it does so by specific reference to a fetus." *Id.* at 202, 836 P.2d at 415. *See, e.g.*, A.R.S. § 13-1103(A) (prohibiting manslaughter of a "person" and of an "unborn child" in different subsections); A.R.S. § 36-329 (providing separately for death certificate for fetal death); A.R.S. § 36-2301.01(D) (defining "viable fetus" not as "human being" but as "unborn offspring of human beings that has reached a [specified] state of fetal development"). Thus, the court held that, in the absence of any express language indicating the legislature intended to encompass the killing of a fetus, the statute could not be so interpreted. *Vo*, 172 Ariz. at 201-02, 836 P.2d at 414-15.

¶6 The court also noted that "perhaps the time has come to reexamine the protections afforded unborn children under Arizona's criminal law in light of the scientific advances in the areas of obstetrics and forensics." *Id.* Nonetheless, it recognized that it could not "expand the scope of a crime by judicial decision to punish a defendant for an act that was not criminal when it was performed" and that "any expansion of the law in this area is the prerogative of the Arizona legislature, not of the courts." *Id.* at 200, 202, 836 P.2d at 413, 415.

¶7 The reasoning in *Vo* remains sound and informs our consideration of whether the legislature intended the terms "dead human body" and "dead human remains," as used

---

419. Because neither party relies on *Summerfield*, however, we do not address those distinctions further.

in § 13-2926, to include the remains of a fetus that was not born alive. *See State v. Cotton*, 197 Ariz. 584, ¶ 11, 5 P.3d 918, 921 (App. 2000) (distinguishing death of fetus from "death of a child who had been born"). We generally "presume that the legislature is aware of existing case law when it passes a statute." *State v. Aro*, 188 Ariz. 521, 524, 937 P.2d 711, 714 (App. 1997). And, since *Vo* was decided, our legislature has continued to indicate in express statutory language when it intends certain provisions to apply to a fetus.

¶8            Indeed, in 2005—the same year the legislature enacted § 13-2926—it also adopted Senate Bill 1051, "Offenses Against Unborn Children," which amended seven criminal statutes to encompass acts committed against fetuses and set penalties for such offenses. *See* Ariz. Sess. Laws 2005, ch. 188, § 7. These statutes included the first-degree murder statute at issue in *Vo*, A.R.S. § 13-1105, to which the legislature added the offense of "caus[ing] the death of an unborn child." In contrast, however, in enacting § 13-2926 the legislature did not include the body of an unborn child or fetus.

¶9            We recognize fetal remains are indisputably of human origin and not alive. Therefore, the legislature's use of the terms "dead human body" and "dead human remains" arguably supports the intuitive conclusion that the statute encompasses fetuses. However, such an interpretation could lead to absurd and potentially unconstitutional results. *See Hernandez v. Lynch*, 216 Ariz. 469, ¶ 13, 167 P.3d 1264, 1268 (App. 2007). Section 13-2926 does not specify a gestational age of fetal development at which the statute is effective, unlike other statutes that expressly apply to fetuses. *See* § 36-329 (requiring fetal death

6

certificate only when death occurs after at least twenty weeks' gestation or if fetus weighs more than 350 grams). And we cannot presume the legislature intended to criminalize a woman's failure to report a miscarriage to the authorities in the very early stages of pregnancy.[5] *See State v. Petrak*, 198 Ariz. 260, ¶ 10, 8 P.3d 1174, 1178 (in construing statute, we avoid reaching absurd result). Indeed, such an interpretation raises an issue of the statute's constitutionality. *See* Ariz. Const. art. 2, § 8 (recognizing right to privacy). "[I]f possible, this court construes statutes to avoid rendering them unconstitutional" and "to avoid unnecessary resolution of constitutional issues." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 272-73, 872 P.2d 668, 676-77 (1994). Furthermore, as noted above, to the extent there is any ambiguity, under the rule of lenity, we must resolve it in favor of the defendant. *See Reinesto*, 182 Ariz. at 192, 894 P.2d at 735. We therefore conclude the legislature did not intend this particular statute to apply to the remains of a fetus. *Accord Vo*, 172 Ariz. at 202, 836 P.2d at 415.

¶10        The state concedes that, in *Vo* and elsewhere, "[t]he words 'person' and 'human being' have been held . . . not to include unborn children." But it nonetheless argues these words are "much narrower" than the terms "dead human body," "parts of a human body," and "human remains" in § 13-2926. When referring to a body, however, the

_____

[5]We are not persuaded by the state's contention at oral argument that the scienter requirement of the statute would limit it to the later stages of pregnancy. A woman can know she has had a miscarriage at any stage of fetal development, including the first trimester. *See Gardner v. Pawliw*, 696 A.2d 599, 601 (N.J. 1997).

7

legislature has also expressly indicated when it intends its use of the term to include a dead fetus. For example, A.R.S. § 11-593 makes it a misdemeanor to fail under certain circumstances to report "the existence of a body" resulting from "the death of a human being including a fetal death."

¶11 Nor are we persuaded by the state's argument, based on the statute providing for fetal death certificates, that "fetal deaths are on equal footing with regular human deaths." The statute providing for death certificates in connection with "human remains," A.R.S. § 36-325, requires "a funeral establishment or responsible person who takes possession of the human remains" to submit the death certificate. In contrast, the fetal death certificate statute, § 36-329, applies only to certain fetal deaths as noted above and requires "a hospital, abortion clinic, physician or midwife" to submit the certificate.[6] Moreover, § 36-329 does not refer to the "body" or "remains" of a fetus but to "the product of human conception."

¶12 Like the court in *Vo*, we must limit our review to the specific issue presented in the case before us; contrary to Lockwood's suggestion, it is not necessary for us to address the question of when life begins. *Vo*, 172 Ariz. at 202, 836 P.2d at 415. Because the state concedes there was no evidence of a live birth, the sole issue here is whether the legislature intended § 13-2926 to apply to fetal remains. In the absence of any language in the statute clearly evincing such an intention, and construing any ambiguity in favor of the defendant,

---

[6]Furthermore, although a death certificate may be submitted to either "a local registrar, a deputy local registrar or the state registrar," § 36-325(A)(3), a fetal death certificate can only be submitted to the state registrar, § 36-329(A).

we must conclude that it did not.[7]  *See Vo*, 172 Ariz. at 202, 836 P.2d at 415; *Reinesto*, 182 Ariz. at 192, 894 P.2d at 735.  Regardless of the merits of extending the statute to encompass such remains, "Arizona is a 'code state,' and this court is legislatively precluded from creating new crimes by expanding the common law through judicial decision." *Vo*, 172 Ariz. at 204, 836 P.2d at 417; *see* A.R.S. § 13-103.  Thus, "any expansion of the law in this area is the prerogative of the Arizona legislature, not of the courts."  *Vo*, 172 Ariz. at 202, 836 P.2d at 415.

## Disposition

¶13     For the reasons stated, we reverse Lockwood's conviction and vacate the probationary term imposed by the trial court.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge

_____

[7]Because we find Lockwood could not be convicted under § 13-2926 as a matter of law, we need not address the secondary issues she raises on appeal. *See Vo*, 172 Ariz. at 206, 836 P.2d at 419.