IN THE
**ARIZONA COURT OF APPEALS**
DIVISION TWO

THE STATE OF ARIZONA,
*Appellee*,

*v.*

USEF LATRICE SIMMONS II,
*Appellant*.

No. 2 CA-CR 2014-0193
Filed November 23, 2015

Appeal from the Superior Court in Cochise County
No. CR201300111
The Honorable James L. Conlogue, Judge

**AFFIRMED IN PART; VACATED IN PART;
REMANDED WITH INSTRUCTIONS**

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Amy M. Thorson, Assistant Attorney General, Tucson
*Counsel for Appellee*

Joel A. Larson, Cochise County Legal Defender, Bisbee
*Counsel for Appellant*

**OPINION**

Presiding Judge Vásquez authored the opinion of the Court, in which Judge Howard and Judge Kelly[1] concurred.

V Á S Q U E Z, Presiding Judge:

**¶1**  Following a jury trial, Usef Simmons was convicted of eleven drug-related offenses. The trial court sentenced him to a combination of consecutive and concurrent, presumptive prison terms. On appeal, Simmons challenges two of his convictions for violating A.R.S. § 13-3417(A), which prohibits using any wire or electronic communication to facilitate or to conspire to commit certain offenses. The primary issue we must decide is whether Simmons, as the principal/seller in a buy-sell drug transaction, could be convicted of violating § 13-3417(A), where there is no evidence of a wire or electronic communication by Simmons with any person except the other principal/buyer. Because we conclude the answer is no, we vacate Simmons's five convictions and sentences for violating § 13-3417(A). For the reasons expressed in a separate memorandum decision, we remand for clarification of Simmons's remaining sentences.[2] We otherwise affirm.

**Factual and Procedural Background**

**¶2**  We view the facts in the light most favorable to sustaining Simmons's convictions. *See State v. Sarullo*, 219 Ariz. 431, ¶ 2, 199 P.3d 686, 688 (App. 2008). In January 2013, narcotics agents

---

[1]The Hon. Virginia C. Kelly, a retired judge of this court, is called back to active duty to serve on this case pursuant to orders of this court and our supreme court.

[2]Simmons raises other sentencing issues that do not meet the criteria for publication. *See* Ariz. R. Sup. Ct. 111(b). We address them in a separate, simultaneously filed memorandum decision. *See* Ariz. R. Sup. Ct. 111(h); Ariz. R. Crim. P. 31.26.

with the Arizona Department of Public Safety received information that Simmons was selling drugs. On January 28, an undercover agent began communicating with Simmons via a cellular telephone number associated with him. The following day, the agent arranged via that phone number to meet Simmons to purchase methamphetamine from him, and the transaction occurred as scheduled.

¶3 On January 30 and 31, the undercover agent contacted Simmons at the same cell phone number and arranged another purchase for the evening of January 31. But the woman who was to deliver the drugs did not show up, and the transaction did not occur. On February 5, the agent set up another drug purchase with Simmons at the same phone number. One of Simmons's codefendants, Cristy Mast, sold the agent methamphetamine at the arranged location.

¶4 The undercover agent next communicated with Simmons on February 11 via the same cell phone number. He and Simmons arranged a methamphetamine transaction for the same day. The sale, however, did not take place because the agent was the only person who showed up. The next day, February 12, the agent again initiated contact with Simmons via Simmons's cell phone and arranged to buy methamphetamine later that day. Simmons's other codefendant, Shannon Curry, met the agent at the arranged time and place but sold him rock salt instead of methamphetamine.

¶5 Officers with the Sierra Vista Police Department arrested Simmons about two weeks later. When they searched him, they found a small plastic baggie containing marijuana in his front left pants pocket. He also had in his possession a cell phone associated with the number that the agent had been using to contact him.

¶6 A grand jury indicted Simmons, Mast, and Curry. The indictment alleged the following charges against Simmons, listed by offense date:

**January 29**
**Count one**:  Knowingly transporting methamphetamine
**Count two**:  Knowingly selling methamphetamine
**Count three**:  Using a wire or electronic communication to facilitate a felony or to conspire to commit a drug felony

**January 31**
**Count four**:  Using a wire or electronic communication to facilitate a felony or to conspire to commit a drug felony

**February 5**
**Count six**:  Knowingly selling methamphetamine
**Count eight**: Using a wire or electronic communication to facilitate a felony or to conspire to commit a drug felony

**February 11**
**Count nine**:  Using a wire or electronic communication to facilitate a felony or to conspire to commit a drug felony

**February 12**
**Count ten**:  Possessing an imitation drug with the intent to distribute
**Count twelve**:  Using a wire or electronic communication to facilitate a felony or to conspire to commit a drug felony

**February 27**
**Count thirteen**:  Possessing marijuana

**January 28 through February 12**
**Count fourteen**:  Conspiring to sell methamphetamine[3]

¶7         The jury found Simmons guilty of all eleven charges, and the trial court sentenced him as described above.  This appeal followed.   We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

---

[3]Counts five and seven involved Mast, while Curry was charged in count eleven.

**Discussion**

¶8 Simmons argues that his convictions for counts nine and twelve, which are based on § 13-3417(A), "must be vacated because they involve non-existent offenses." That section provides, "It is unlawful for a person to use any wire communication[4] or electronic communication[5] as defined in [A.R.S.] § 13-3001 to facilitate the violation of any felony provision or to conspire to commit any felony provision of [chapter 34] or chapter 23 of [title 13]." Chapter 34 of title 13 deals with "Drug Offenses," while chapter 23 addresses "Organized Crime, Fraud and Terrorism."

¶9 Simmons points out that the offenses charged in counts nine and twelve involved the sale of rock salt, which falls under chapter 34.1, "Imitation Substance or Drug Offenses," not chapter 34 or 23. He therefore reasons that the offenses "do not exist" under § 13-3417(A) and that "it was fundamental error to instruct the jury on a non-existent theory of liability." The state responds that Simmons "violated § 13-3417 . . . by using his cell phone to communicate with the officer on February 11 and 12" regarding the sale of a dangerous drug and that whatever happened after their communications is of no consequence. The state suggests that the underlying offense facilitated or conspired to commit need not be completed for § 13-3417(A) to apply.

---

[4]"'Wire communication' means any aural transfer that is made in whole or in part through the use of facilities for the transmission of communications by the aid of any wire, cable or other like connection between the point of origin and the point of reception . . . ." A.R.S. § 13-3001(14).

[5]"'Electronic communication' means any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature that is transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system," excluding "wire or oral communication," "communication through a tone-only paging device," and "communication from a tracking device." A.R.S. § 13-3001(4).

¶10        In the course of our review, we questioned whether the record contained sufficient evidence that Simmons used a wire or electronic communication to "facilitate" or "conspire to commit" these offenses.  § 13-3417(A); *see State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App. 2007) ("Although we do not search the record for fundamental error, we will not ignore it when we find it."); *State v. Stroud*, 209 Ariz. 410, n.2, 103 P.3d 912, 914 n.2 (2005) ("'It is . . . fundamental error to convict a person for a crime when the evidence does not support a conviction.'"), *quoting State v. Roberts,* 138 Ariz. 230, 232, 673 P.2d 974, 976 (App. 1983).  We thus ordered supplemental briefing on whether a defendant, as a principal in a buy-sell drug transaction, can be convicted of using a wire or electronic communication to facilitate or conspire with the other principal, in violation of § 13-3417(A), where there is no evidence of a wire or electronic communication by the defendant with any person except the other principal.[6]

¶11        We begin by noting that the language of § 13-3417(A) is not a model of clarity.  Even so, no published case has interpreted the statute during its twenty-five-year existence.  Accordingly, we must consider the language of § 13-3417(A) to ascertain whether evidence of a wire or electronic communication between two principals in a buy-sell drug transaction is sufficient for a violation of the statute.  This necessarily requires us to determine the meaning of "facilitate" and "conspire" as used in the statute.

¶12        "We review issues of statutory interpretation de novo . . . ."  *State v. Barnett*, 209 Ariz. 352, ¶ 7, 101 P.3d 646, 648 (App. 2004).  "'Our goal in interpreting statutes is to ascertain and give effect to the intent of our legislature,' and the plain language of

---

[6]Because this issue is dispositive, we need not address the others.  *See State v. Amaya-Ruiz*, 166 Ariz. 152, 173 n.1, 800 P.2d 1260, 1281 n.1 (1990) (when resolution of one issue dispositive of argument, court need not address other issues implicated by argument).  Simmons alternatively contends that counts nine and twelve "must be designated class 6, and not class 4 felony convictions" and that he should be resentenced accordingly.  However, we likewise do not address this argument.

the statute is the best and most reliable indicator of that intent." *State v. Lockwood*, 222 Ariz. 551, ¶ 4, 218 P.3d 1008, 1010 (App. 2009), *quoting State v. Garcia*, 219 Ariz. 104, ¶ 6, 193 P.3d 798, 800 (App. 2008). "'When a statute is clear and unambiguous, we apply its plain language and need not engage in any other means of statutory interpretation.'" *State v. Gongora*, 235 Ariz. 178, ¶ 5, 330 P.3d 368, 369 (App. 2014), *quoting State v. Arellano*, 213 Ariz. 474, ¶ 9, 143 P.3d 1015, 1018 (2006).

**¶13** We construe penal statutes "according to the fair import of their terms, with a view to effect their object and to promote justice." A.R.S. § 1-211(C); *see also State v. Peek*, 219 Ariz. 182, ¶ 11, 195 P.3d 641, 643 (2008). Thus, "[a] statute is to be read and applied in accordance with any special statutory definitions of the terms it uses." *State v. Hazlett*, 205 Ariz. 523, ¶ 27, 73 P.3d 1258, 1266 (App. 2003); *see also* A.R.S. § 1-213 ("Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning."). When terms are not specifically defined, "courts apply common meanings and may look to dictionaries." *State v. Pena*, 235 Ariz. 277, ¶ 6, 331 P.3d 412, 414 (2014) (internal citation omitted); *see also* § 1-213.

**¶14** Here, the legislature has defined the crimes of "facilitation" and "conspiracy" in title 13. Section 13-1004(A), A.R.S., provides, "A person commits facilitation if, acting with knowledge that another person is committing or intends to commit an offense, the person knowingly provides the other person with means or opportunity for the commission of the offense." And A.R.S. § 13-1003(A) explains,

> A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense . . . .

7

¶15 We are thus bound by these definitions when interpreting the language of § 13-3417(A), including the meaning of "facilitate" and "conspire." *See Hazlett*, 205 Ariz. 523, ¶ 27, 73 P.3d at 1266; *see also State v. Wilson*, 200 Ariz. 390, ¶ 20, 26 P.3d 1161, 1168 (App. 2001) ("When a statutory scheme expressly defines certain terms, we are bound by those definitions in construing a statute within that scheme."). The state, however, urges us to apply the common meaning of "facilitate" and "conspire," suggesting that we use broad dictionary definitions. *See The American Heritage Dictionary* 393, 632 (5th ed. 2011) (defining "conspire" as "[t]o plan together secretly to commit an illegal or wrongful act or accomplish a legal purpose through illegal action" and "facilitate" as "[t]o make easy or easier"). But we resort to common meanings and dictionary definitions only when statutory terms are not otherwise defined by our legislature. *See Pena*, 235 Ariz. 277, ¶ 6, 331 P.3d at 414.

¶16 We acknowledge that nothing within the plain language of § 13-3417(A) incorporates the definitions of facilitation and conspiracy provided in §§ 13-1003(A) and 13-1004(A), unlike the definitions for wire and electronic communications in § 13-3001. But the legislature is not required to specifically incorporate statutory definitions into a statute. *See State v. Cutshaw*, 7 Ariz. App. 210, 219, 437 P.2d 962, 971 (1968) ("When the legislature has used a word to which it has given a prescribed definition, that definition should be followed by the courts."). And if the legislature had intended different meanings for the terms "facilitate" and "conspire" in § 13-3417(A), it could have said so. *See State v. Garza Rodriguez,* 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990) ("We presume that the legislature knows the existing laws when it enacts or modifies a statute."); *State v. Flynt*, 199 Ariz. 92, ¶ 5, 13 P.3d 1209, 1211 (App. 2000) (we construe statutory provisions to be "'harmonious and consistent'" within statutory scheme), *quoting State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970).

¶17 Incorporating these definitions of facilitation and conspiracy into § 13-3417(A), the statute plainly proscribes using a wire or electronic communication to: (1) "with knowledge that another person is committing or intends to commit an offense, . . . knowingly provide[] the other person with means or opportunity for

the commission of the offense," § 13-1004(A), or (2) "with the intent to promote or aid the commission of an offense, . . . agree[] with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense," § 13-1003(A).[7] This language plainly requires at least two parties to the wire or electronic communication who are arranging to commit a particular offense. *See Gongora*, 235 Ariz. 178, ¶ 5, 330 P.3d at 369.

¶18        *Abuelhawa v. United States*, 556 U.S. 816 (2009), supports our conclusion. There, the issue was whether a defendant violated 21 U.S.C. § 843(b), the analogous federal counterpart to § 13-3417(A), by "making a misdemeanor drug purchase because his phone call to the dealer can be said to facilitate the felony of drug distribution." *Abuelhawa*, 556 U.S. at 818. The Supreme Court refused to apply the plain meaning of the term "facilitate," which would have criminalized the defendant's conduct because his use of the telephone "'allow[ed] the transaction to take place more efficiently.'" *Id.* at 819 (alteration in original). The Court noted that such an interpretation "sits uncomfortably with common usage." *Id.* at 820. It explained:

> Where a transaction like a sale necessarily presupposes two parties with specific roles, it would be odd to speak of one party as facilitating the conduct of the other. A buyer does not just make a sale easier; he makes the sale possible. No buyer, no sale;

---

[7]At oral argument, the state insisted that if we incorporate the definition of conspiracy into § 13-3417(A), an overt act must be completed during the wire or electronic communication for a violation of that statute. Generally, "[i]n order to sustain a conviction for conspiracy, it is essential that an overt act by one or more of the conspirators to effect the object of the conspiracy be alleged and proved." *State v. Olea*, 139 Ariz. 280, 294, 678 P.2d 465, 479 (App. 1983). But we disagree that the overt act must be completed during the wire or electronic communication for a violation of § 13-3417(A) to occur.

> the buyer's part is already implied by the
> term "sale," and the word "facilitate" adds
> nothing.  We would not say that the
> borrower facilitates the bank loan.

*Id.*

¶19        The Court further observed that "facilitate" generally refers to "the efforts of someone other than a primary or necessary actor in the commission of a substantive crime."  *Id.*; *see also People v. Watson*, 981 N.E.2d 265, 269-71 (N.Y. 2012) (applying New York facilitation statute to defendant who brought undercover officer to dealer, providing dealer opportunity to sell drugs to officer).  Opting to apply this more limited definition, which it determined was consistent with "terms like 'aid,' 'abet,' and 'assist,'" the Court reversed the court of appeals, which had upheld the defendant's conviction based on the common meaning of "facilitate," and remanded for further proceedings.  *Abuelhawa*, 556 U.S. at 819-21, 824.

¶20        Similarly, where there is an agreement "to commit an offense which can only be committed by the concerted action of the two persons to the agreement, such agreement does not amount to a conspiracy."  *State v. Chitwood*, 73 Ariz. 161, 166, 239 P.2d 353, 356 (1951).  The law on conspiracy "presupposes that the conspirators have agreed to commit a specific crime, i.e., conspiring to sell narcotic drugs."  *State v. Stevenson*, 171 Ariz. 348, 350, 830 P.2d 869, 871 (App. 1991).  Consequently, a simple buy-sell drug transaction does not constitute a conspiracy.  *See id.*

¶21        For example, in *United States v. Lennick*, 18 F.3d 814, 816 (9th Cir. 1994), the defendant was convicted of conspiracy to manufacture, distribute, or possess marijuana and manufacturing marijuana in excess of fifty plants, both with intent to distribute.  On appeal, among other arguments, the defendant challenged the sufficiency of the evidence to support his conspiracy conviction.  *Id.* at 818.  The court first noted that "[c]onspiracy, by its nature, requires the government to prove that at least two persons had an agreement to commit the underlying offense."  *Id.*  The state had presented evidence that the defendant sold or gave marijuana to

several individuals; however, the court explained that such evidence only proved distribution, not conspiracy. *Id.* at 818-19.

**¶22** Citing other federal circuit cases, the court observed that "conspiracy requires proof of 'an agreement to commit a crime other than the crime that consists of the sale itself.'" *Id.* at 819, *quoting United States v. Lechuga*, 994 F.2d 346, 347 (7th Cir. 1993) (en banc); *cf. Chitwood*, 73 Ariz. at 166, 239 P.2d at 356 ("[W]here one person agrees with a public official to pay the latter a bribe in consideration of some illegal benefit to be received by the payer[,] . . . the agreement to commit bribery merges in the completed act."). The court acknowledged that the defendant's conviction could "still be valid, notwithstanding the lack of any evidence that [the defendant] conspired with any particular individual, if the government proved that [he] must have conspired with some other individual (known or unknown) in order to accomplish his illegal purposes." *Lennick*, 18 F.3d at 819. But the court found nothing in the record to support this inference. *Id.* at 820. Accordingly, it reversed the defendant's conspiracy conviction. *Id.*

**¶23** We agree with this reasoning and conclude that a defendant cannot be convicted of violating § 13-3417(A) when he acts as a principal in a buy-sell drug transaction between two parties and there is no evidence of any wire or electronic communication by the defendant with any person except the other principal. We now turn to the facts of this case to determine whether the state presented sufficient evidence showing that Simmons violated § 13-3417(A), as alleged in counts three, four, eight, nine, and twelve. *See Stroud*, 209 Ariz. 410, n.2, 103 P.3d at 914 n.2.

**¶24** Count three stems from the only transaction in which Simmons himself was present for the sale of methamphetamine to the undercover agent. The state relied on evidence that Simmons had communicated over his cell phone with the agent to arrange the meeting to show a violation of § 13-3417(A). Such evidence, however, is insufficient. Simmons was the seller, while the agent was the buyer; both were necessary principals to the drug transaction. The state presented no evidence that Simmons used his phone to "facilitate" the efforts of a third party to complete the sale,

*see Abuelhawa*, 556 U.S. at 818, or to "conspire" with a third party to do so, *see Chitwood*, 73 Ariz. at 166, 239 P.2d at 356.

¶25　　　　Notably, Simmons's defense to this particular transaction was that an acquaintance by the name of "Rayquan" sold the undercover agent the methamphetamine after Simmons refused. Rayquan was in the same vehicle as Simmons at the time of the sale and physically handed the methamphetamine to the agent. Evidence of the involvement of a third party to the transaction might suggest that Simmons facilitated Rayquan's efforts or otherwise conspired with him. However, Simmons and Rayquan's communications were in person and not over any wire or electronic device, as required to commit the offense proscribed by § 13-3417(A). The state therefore presented insufficient evidence to prove that Simmons violated § 13-3417(A) on January 29. Accordingly, we vacate Simmons's conviction for count three. *See State v. Garfield*, 208 Ariz. 275, n.1, 92 P.3d 905, 907 n.1 (App. 2004) (if evidence insufficient to support jury's verdict, we must vacate conviction).

¶26　　　　As to count four, no drug transaction actually occurred on January 31 because the undercover agent was the only person who showed up. To show a violation of § 13-3417(A), the state nevertheless relied on evidence that Simmons used his cell phone to communicate with the agent to arrange the meeting on January 31. But, for the same reasons as discussed with count three, that is insufficient. Both Simmons and the agent were necessary principals to the transaction. Consequently, we vacate Simmons's conviction for count four. *See Garfield*, 208 Ariz. 275, n.1, 92 P.3d at 907 n.1.

¶27　　　　Count eight involved a third person, Simmons's codefendant, Mast. There was thus "someone other than a primary or necessary actor" whose efforts might have been facilitated by Simmons or with whom he might have conspired. *Abuelhawa*, 556 U.S. at 820. But, in order to violate § 13-3417(A), Simmons needed to use a wire or electronic device to communicate with Mast. The state, however, presented no evidence showing how the two communicated regarding the February 5 transaction. In fact, a detective testified that he was unable to retrieve any data from

Simmons's cell phone prior to February 22.[8]   The evidence is therefore insufficient to show that Simmons used it to "facilitate" or "conspire to commit" a sale of methamphetamine. § 13-3417(A). We vacate Simmons's conviction for count eight. *See Garfield*, 208 Ariz. 275, n.1, 92 P.3d at 907 n.1.

¶28        Like count four, no transaction actually occurred with respect to count nine because the undercover agent was the only party to show up to the scheduled meeting on February 11. Also, as with count four, to prove Simmons violated § 13-3417(A) as alleged in count nine, the state relied solely on evidence that Simmons used his cell phone to communicate with the agent. But again both Simmons and the agent were principals in the transaction, and their communications alone are insufficient to prove that Simmons violated § 13-3417(A). *See Abuelhawa*, 556 U.S. at 820; *Chitwood*, 73 Ariz. at 166, 239 P.2d at 356. Consequently, we vacate Simmons's conviction for count nine. *See Garfield*, 208 Ariz. 275, n.1, 92 P.3d at 907 n.1.

¶29        Lastly, like count eight, count twelve involved a third person, Simmons's other codefendant, Curry, who sold the undercover agent rock salt. However, also like count eight, the state presented no evidence to show how Simmons and Curry communicated. There was no evidence that Simmons used his cell phone to agree with Curry to sell the agent rock salt or methamphetamine. Accordingly, because the state presented insufficient evidence to prove that Simmons violated § 13-3417(A) on February 12, we vacate his conviction for count twelve. *See Garfield*, 208 Ariz. 275, n.1, 92 P.3d at 907 n.1.

¶30        Fundamental error is an "exceptional rule" with a "narrow applicability." *State v. Diaz*, 168 Ariz. 363, 365-66, 813 P.2d 728, 730-31 (1991). However, we will not hesitate to apply this doctrine under appropriate circumstances. *See Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d at 650. We conclude this case presents such

---

[8]According to Simmons, the cell phone he had with him when he was arrested was new to him and had been activated to receive calls at his number on February 22.

circumstances. Simply put, Simmons's convictions, and corresponding sentences, for violating § 13-3417(A) cannot stand because his conduct, as presented at trial, was not proscribed by the statute.[9] *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005); *Stroud*, 209 Ariz. 410, n.2, 103 P.3d at 914 n.2.

## Disposition

**¶31** For the foregoing reasons, we vacate Simmons's convictions and sentences for counts three, four, eight, nine, and twelve. For the reasons discussed in our separate memorandum decision, we remand for clarification of Simmons's sentences on the remaining counts. We otherwise affirm.

---

[9]By contrast, Simmons's conspiracy conviction under § 13-1003(A) in count fourteen is supported by sufficient evidence. "Any action sufficient to corroborate the existence of the agreement and to show that it is being put into effect is sufficient to support the conspiracy." *State v. Verive*, 128 Ariz. 570, 581, 627 P.2d 721, 732 (App. 1981). Here, the undercover agent communicated with Simmons via his cell phone to arrange the various drug transactions, but Mast and Curry each showed up on different days to complete the sales. And, each of the women referred to Simmons during their verbal exchange with the agent. *See State v. Arredondo*, 155 Ariz. 314, 317, 746 P.2d 484, 487 (1987) ("Criminal conspiracy need not be, and usually cannot be, proved by direct evidence.").