**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| JACQUES ILUNGA ILUNGA-KABAMBA, AKA Ilunga-Kabamba Jacques, AKA Jacques Kabamba, AKA Jacques I. Kabamba, AKA Jacques Ilunga Kabamba, AKA Jacques Lunga Kabamba, AKA Jacquis Ilunga Kabamba, AKA Jacquis Irunga Kabamba, AKA jaques Kabamba, Petitioner, v. ROBERT M. WILKINSON, Acting Attorney General, Respondent. | No.  19-70419 Agency No. A096-143-587 MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 5, 2021
Phoenix, Arizona

Before: W. FLETCHER, MILLER, and HUNSAKER, Circuit Judges.

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Jacques Ilunga-Kabamba ("Petitioner") petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying him asylum, withholding of removal, and withholding or deferral of removal under the Convention Against Torture ("CAT").

Petitioner, a citizen of the Democratic Republic of the Congo ("DRC"), immigrated to the United States at eighteen years old with derivative asylee status through his father, Auguy Ilunga-Kabamba ("Auguy"). In 2015, Petitioner pled guilty to and was sentenced for offenses including one count of Conspiracy to Commit Possession of Marijuana for Sale, in violation of Ariz. Rev. Stat. §§ 13-3401, 13-3405, 13-3405(A)(2), 13-3418, 13-701, 13-702, 13-1003, 13-801, 13-301, 13-302, 13-303, and 13-304. He was placed in removal proceedings, and the Immigration Judge ("IJ") denied relief. The BIA agreed, dismissing Petitioner's appeal.

### 1. Removability

Petitioner challenges the BIA's conclusion that his Arizona conspiracy conviction constituted an aggravated felony under 8 U.S.C. §§ 1101(a)(43)(B) and (U). Because the BIA recognized the claim and addressed it on the merits, it is exhausted. *See Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 874 (9th Cir. 2008).

2

We apply the categorical approach to determine whether a prior conviction constitutes an aggravated felony. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). Petitioner argues that Arizona's conspiracy statute, Ariz. Rev. Stat. § 13-1003(A), is overbroad because Arizona permits conspiracy liability when the requisite overt act is committed by either (a) a later-joining conspirator who was not part of the initial "underlying" conspiracy, or (b) a non-conspirator. We disagree.

First, Arizona is not unusual in recognizing culpability for originating conspirators even when overt acts are undertaken by later-joining conspirators. *See, e.g.*, *Smith v. United States*, 568 U.S. 106, 114 (2013) ("[A] defendant's membership in the conspiracy, and his responsibility for its acts, endures even if he is entirely *inactive* after joining it."); *Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946) ("It is settled that an overt act of one partner may be the act of all without any new agreement specifically directed to that act." (internal citation and quotation marks omitted)); *United States v. Garrison*, 888 F.3d 1057, 1064 (9th Cir. 2018) ("[A] defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details." (internal citation and quotation marks omitted)); *Marino v. United States*, 91 F.2d 691, 696 (9th Cir. 1937) ("[T]he joinder thereof by a new member does not create a new conspiracy, does not change the status of the other

3

conspirators, and the new member is as guilty as though he was an original conspirator." (internal citations and footnotes omitted)). Petitioner has not shown that Arizona's approach is different from the generic definition of conspiracy.

Second, while Arizona's statute contemplates that a non-conspirator might commit the intended offense conduct, it requires that at least one co-conspirator commit an overt act. *See* Ariz. Rev. Stat. § 13-1003(A); *State v. Simmons*, 363 P.3d 120, 124 n.7 (Ariz. Ct. App. 2015) ("[I]t is essential that an overt act by one or more of the conspirators to effect the object of the conspiracy be alleged and proved." (quoting *State v. Olea*, 678 P.2d 465, 479 (Ariz. Ct. App. 1983))). This is not a basis for distinguishing Arizona law from generic conspiracy.

We asked the parties to address at oral argument whether Arizona law covers unilateral conspiracy and is therefore overbroad under *United States v. Brown*, 879 F.3d 1043, 1048 (9th Cir. 2018). The BIA did not address that question in its order. The government has moved to remand the case to allow the BIA to consider that question in the first instance (Dkt. 41). We GRANT the government's motion and remand to the BIA on this question.

## 2. Convention Against Torture

With respect to relief under CAT, we remand to the BIA for further consideration.

"Under CAT's implementing regulations, the BIA must consider all evidence of country conditions to determine the likelihood that an applicant would be tortured." *Madrigal v. Holder*, 716 F.3d 499, 508 (9th Cir. 2013) (citing 8 C.F.R. § 1208.16(c)(3)). The BIA need not "discuss each piece of evidence submitted," but if "there is any indication that the BIA did not consider all of the evidence before it," such as "failing to mention highly probative or potentially dispositive evidence," remand is appropriate. *Cole v. Holder*, 659 F.3d 762, 771–73 (9th Cir. 2011).

Neither the IJ nor the BIA took into account country conditions reports or the testimony of Auguy, Petitioner's father, who had been a highly visible television preacher in the DRC. Auguy's asylum application had been the basis for Petitioner's derivative grant of asylum. Auguy was found credible by the IJ.

In denying CAT relief to Petitioner, the BIA wrote, "*There is no indication* . . . that DRC government officials or any other individuals acting [in] an official capacity would be interested in him at this time." (Emphasis added.) However, Auguy testified otherwise. Auguy testified that his name would still be

recognized in the DRC, that Petitioner would be at risk despite the passage of time, and that his American citizenship afforded him safety in the DRC that Petitioner would not share. Auguy's return visits to the DRC indicate familiarity with current conditions, including relatively little change in the relevant governmental actors. Auguy testified, "Congolese, they can kill you. They can destroy you." He was asked, "So you're telling me you think that if he were to go back something bad would happen to him." He answered, "Yeah, if they know it's him." He was asked, "How would they know?" He answered, "They have a magnet [sic]. He's an Ilunga Kabamba."

Auguy's testimony was the kind of "highly probative" and "potentially dispositive" evidence warranting consideration. *Cole*, 659 F.3d at 771–72. Further, there was evidence in the record, both in Auguy's testimony and in country condition reports, that Petitioner would be at additional risk because of his status as a returned asylum seeker. Petitioner's submissions describe a study of returned asylum seekers in which just over half experienced some form of mistreatment. Auguy's testimony, in combination with country condition reports, may warrant a different conclusion than that reached by the BIA.

Petition **GRANTED** and **REMANDED**.